In the Interest of C.M.T., A Child.

Appeal of T.T.S., Mother–Appellant.

No. 88–58.

Court of Appeals of Iowa.

Sept. 28, 1988.

Bobbi M. Alpers, Davenport, for appellant mother and for child.

Thomas J. Miller, Atty. Gen., Valencia Voyd McCown, Asst. Atty. Gen., and Henry C. Filseth, Asst. Scott Co. Atty., for appellee State.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

C.M.T. was born March 21, 1986, and is now two years and four months old. Five days after she was born, C.M.T. was left to an unknown caretaker without sufficient food or diapers and without instructions as to how the mother could be contacted. Five days later, ten days after the child was born, the mother resurfaced when she was arrested for prostitution. During those five days, the caretaker for the child never heard from the mother. The babysitter, after the mother's absence for five days, contacted the Department of Human Services. The child was placed in foster care April 2, 1986, where she has remained since.

In June of 1986, T.T.S. was again arrested for prostitution for which she spent thirty days in jail and, upon conviction, received a two-year probation to the Seventh Judicial District Department of Corrections.

C.M.T. was adjudicated a child in need of assistance pursuant to sections 232.2(6)(b) and 232.2(6)(c)(2) of the Iowa Code upon order of the juvenile court filed May 20, 1986. On December 10, 1987, the juvenile court terminated parental rights.

The mother appeals from this termination order. She contends that there is no clear and convincing evidence that the child cannot safely be returned to her care now that she is out of jail on probation.

Iowa Code section 232.116(5) (1987) permits the juvenile court to terminate the parent-child relationship if the child has been adjudicated in need of assistance, has been placed out of the parent's custody for more than twelve of the last eighteen months, and there is clear and convincing evidence that the child will suffer harm specified in Iowa Code section 232.2(6) (1987) if returned to the parent. *See In re K.L.C.*, 372 N.W.2d 223, 227 (Iowa 1985).

The types of harm specified in section 232.2(6) include the physical abuse or neglect of the child and the harm caused by the parent's failure to exercise reasonable care in supervising the child. Proof of any one of the types of harm delineated in section 232.2(6) is sufficient to support termination. *See In re K.L.C.*, 372 N.W.2d at 228.

Our review of proceedings to terminate a parent-child relationship is de novo. We accord weight to the fact findings of the juvenile court, especially when considering the credibility of the witnesses the court has heard and observed first hand, but we are not bound by them. Our primary concern is the best interests of the child. We look to the child's long-range, as well as immediate, interests. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We consider what the future holds for the child if returned to his or her parents. *Id.* Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. *Id.* Our statutory termination provisions are preventative as well as remedial. *Id.* They are designed to prevent probable harm to a child. *Id.*

The State must prove the allegations of the petition to terminate by clear and convincing evidence. *See Santosky v. Kramer*, 455 U.S. 745, 770, 102 S.Ct. 1388, 1402, 71 L.Ed.2d 599, 617 (1982). This includes the requirement that before the court may terminate the parental rights there must be clear and convincing proof that the child will suffer harm in a manner

specified in section 232.2(6). *See In re Chad*, 318 N.W.2d 213, 219 (Iowa 1982). The child should not be forced to endlessly suffer the parentless limbo of foster care. *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977). He or she need not endlessly await the maturity of his or her natural parent. *In Interest of T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). Termination must occur if enough time (twelve to eighteen months) has passed and the parent still cannot take care of the child. *Id.*

■ Turning to the record, we first note that the father of C.M.T. stated at the time of the termination hearing that he intentionally desired to relinquish his parental rights to the child. He has abandoned C.M.T.

T.T.S.'s living situation since the child's placement in foster care has been very unstable. The mother had a number of different residences and, for the most part, lived with friends. Moves from residence to residence were necessitated by arguments with those friends or their refusal to provide T.T.S. a continuing place to live. The Family Life Specialist documented seven residences from February 1987 through September 1987. For the same time period, the Lutheran Social Services social worker was able to describe only three residences. The trial court deduced that this meant that the mother had been out of contact with the social worker for certain periods of time.

T.T.S. has been diagnosed as having a passive-aggressive personality disorder. Her condition is severe and will remain a life-long problem requiring periodic therapy for life. Her condition is treatable and manageable, although not curable. It is characterized by poor judgment, lack of impulse control, or poor temper control.

T.T.S. did complete the systematic training for effective parenting (STEP) program in July 1987. She was not able to make much progress in this program until she was able to form a reasonable working relationship with the Family Life Specialist. Since T.T.S. completed that program, the Family Life Specialist had provided T.T.S. with information on child care, child management, child development, and consumer information. To her credit, T.T.S. seemed to be able to understand the information provided and utilize it in the care of her infant son, Daniel, who was born August 8, 1987.

The trial court found that the mother was making some reasonable efforts to improve her own life situation and to improve her parenting capabilities for her infant son. However, there was no indication in the record that the mother intended or desired to parent C.M.T. or that she would ever be able to establish the ability to do so. There is no bonding between the child and mother. The trial court found that for some reason not apparent to the court that T.T.S. seemed to have no interest in C.M.T. The court stated that T.T.S. certainly had no time for C.M.T.

Whatever the reason, C.M.T. is now over two years old and still has no mother. The mother at the time of trial had made some plausible efforts to keep the obligations imposed upon her by the case plan, but the court was suspicious that the efforts she had made were induced by the pending termination hearing and the court questioned whether or not they could be sustained. Any change made had occurred within two or three months of the trial.

The trial court found that T.T.S.'s testimony was suspect because of her tendency to embellish or to fabricate the keeping of appointments and attendance at required meetings, counseling sessions, etc., which were not verified by other sources. Her statements as to her attendance at AA meetings, meetings with her probation officer, meetings with the social workers, meetings with her counselors, and keeping visitation with the child were not supported by other proof. The trial court also found her testimony to be suspect because of the glib manner the court observed as she testified. The court found that an additional cause to suspect permanent change would not occur was the fact that the mother's lack of judgment, poor impulse control, and poor temper control were likely to continue in some degree due to the severity of her personality disorder. Perhaps most com-

pelling of the court's suspicion was the mother's utter and complete lack of visitation with the child right up to the time of hearing.

Paramount to this court's determination is the best interest of the children. *In re Dameron*, 306 N.W.2d 743 (Iowa 1981). Our supreme court has held that the best interests of the child requires improvements by a parent in the areas of parenting and caring for the child. *In Interest of Voeltz*, 271 N.W.2d 719 (Iowa 1978). We do not find such improvement on the part of T.T.S. in these areas as it regards C.M.T. Therefore, we affirm the termination of T.T.S.'s parental rights as to C.M.T.

AFFIRMED.