# IN THE SUPREME COURT OF IOWA

No. 09–1036

Filed January 29, 2010

**IN THE INTEREST OF**

**P.L.,**

    Minor Child,

**O.L.-V.,** Father,

    Appellant,

**STATE OF IOWA,**

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Mary Jane Sokolovske, Judge.

The State requests further review of a court of appeals decision reversing a juvenile court decision to terminate a father's parental rights. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Matthew R. Metzgar of Rhinehart Law, P.C., Sioux City, for appellant-father.

Thomas J. Miller, Attorney General, Janet L. Hoffman, Katherine S. Miller-Todd, and Bruce Kempkes, Assistant Attorneys General, Patrick

Jennings, County Attorney, and David Dawson, Assistant County Attorney, for appellee-State.

Jessica Knoll, Sioux City, for mother.

Marchelle Denker of Sioux City Juvenile Office, Sioux City, Guardian Ad Litem for minor child.

Gerald Denney, Niobrara, Nebraska, for Santee Sioux Nation.

**WIGGINS, Justice.**

In this case, we must decide if the juvenile court was correct in terminating a father's parental rights. In our de novo review of the record, we determine the juvenile court properly terminated the father's parental rights. Therefore, we vacate the decision of the court of appeals and affirm the judgment of the juvenile court.

### I. Prior Proceedings.

The juvenile court found by clear and convincing evidence that the father's parental rights should be terminated.[1] The father appealed and our court of appeals reversed the judgment of the juvenile court. The State asked for further review, which we granted.

### II. Analytical Framework.

This case gives us the opportunity to review the analytical framework used by Iowa courts to determine whether a court should terminate a parent's parental rights under Iowa Code section 232.116 (2009).[2] In the last three decades, the most consistent framework applied by the courts in this state in deciding whether to terminate a parent's parental rights was first to determine if the State had proved an

---

[1]In an order filed October 2008 the juvenile court determined that both the Federal and Iowa Indian Child Welfare Acts applied to this proceeding. 25 United States Code § 1912(f) and Iowa Code section 232B.6(6)(*a*) require proof beyond a reasonable doubt that continued custody of the child by the child's parent is "likely to result in serious emotional or physical damage to the child" to terminate a parent's parental rights. 25 U.S.C. § 1912(f) (2006); Iowa Code § 232B.6(6)(*a*) (2009). The juvenile court in its termination decision terminated the parent's parental rights under the clear and convincing evidence standard. The State moved to enlarge the juvenile court's findings of fact to find the termination was proved beyond a reasonable doubt as required by the Indian Child Welfare Acts. Before the juvenile court ruled on the State's motion, the father filed a notice of appeal. The juvenile court never ruled on the State's motion. On appeal, neither party raises the burden of proof as an issue. In the State's response to the father's petition on appeal, it argues clear and convincing evidence supported the termination of the father's parental rights. Therefore, we will review this case, as tried and appealed, and determine whether clear and convincing evidence supports the juvenile court's decision to terminate the father's parental rights.

[2]All cites are to the 2009 Code of Iowa unless otherwise indicated.

enumerated ground contained in section 232.116(1).[3]  *See, e.g., In re K.M.*, 653 N.W.2d 602, 605 (Iowa 2002); *In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994); *In re N.H.*, 383 N.W.2d 570, 574 (Iowa 1986).  If the State has proved an enumerated ground, the court then determined whether the decision to terminate was in the best interest of the child.  *See, e.g., In re K.M.*, 653 N.W.2d at 605–06; *In re M.S.*, 519 N.W.2d at 400; *In re N.H.*, 383 N.W.2d at 574.  Although we believe this framework is somewhat consistent with the statute, we believe we must slightly modify our analysis to better conform to the terms of the statute.

Originally, the termination-of-parental-rights statutes were found in chapter 232 of the Iowa Code.  *See, e.g.,* Iowa Code § 232.48 (1975). In 1976 the legislature enacted new statutes relating to the termination of parental rights.  1976 Iowa Acts ch. 1229.  These statutes repealed the termination provisions in chapter 232 of the Code in favor of new termination provisions.  *See id.* ch. 1229, § 38 (repealing the termination provisions contained in chapter 232).  The code editor codified these new termination provisions in chapter 600A.  *See* Iowa Code §§ 600A.1–.9 (1977).  Thus, chapter 600A became the exclusive mechanism for terminating a parent's parental rights.  *Id.* § 600A.3.  Chapter 600A did not distinguish between terminations in anticipation of a private adoption or terminations by the State after a juvenile court made a finding that a child was in need of assistance.  Chapter 600A required that if a juvenile court found the child to be in need of assistance and its order was in force at the time of the filing of the termination petition, then the termination petition must be filed with the juvenile court making that determination.  *Id.* § 600A.5(2).

---

[3]At the time *In re N.H.*, 383 N.W.2d 570 (Iowa 1986) was decided, present day section 232.116(1) was codified as section 232.116(1) through (5).  *Compare* Iowa Code § 232.116(1) (2009) *with* Iowa Code §§ 232.116(1)–(5) (1985).

Chapter 600A contained seven grounds for termination. *Id.* § 600A.8. Chapter 600A also contained a section stating that the paramount consideration in interpreting chapter 600A was the welfare of the child. *Id.* § 600A.1. Based on these provisions, our court developed an analytical framework for deciding a termination case under chapter 600A. The court had to decide if an enumerated ground for termination was proved, and if one was, the court next had to determine whether the termination was in the best interest of the child. *See In re B.L.A.*, 357 N.W.2d 20, 23 (Iowa 1984) (stating when conducting a termination analysis under chapter 600A, "[i]n addition to the determination that the statutory grounds for termination have been met, we must determine that the termination would benefit the children"); *Klobnock v. Abbott*, 303 N.W.2d 149, 153 (Iowa 1981) (concluding under chapter 600A that a court could terminate a parent's parental rights if a statutory ground for termination has been met and under the facts of the case the termination would be in the best interests or welfare of the child).

Around the time Iowa enacted chapter 600A, scholars began questioning the best-interest standard used by courts to terminate parental rights. Professor Wald of Stanford University wrote the seminal article on the subject in April of 1976. Michael S. Wald, *State Intervention on Behalf of "Neglected" Children: Standards for Removal of Children from Their Homes, Monitoring the Status of Children in Foster Care, and Termination of Parental Rights*, 28 Stan. L. Rev. 623 (1976) [hereinafter "*Wald Article*"]. Professor Wald's thesis was that the best-interest test, as used in statutes such as Iowa's, provided little or no guidance for the court in deciding when to terminate a parent's parental rights. *Id.* at 631. Because of the lack of guidance, a judge's decision to terminate usually reflected each judge's own "folk psychology," leading to

excessive and potentially discriminatory removals. *Id.* at 650. Many times the best-interest test allowed judges to make decisions based on their own value system rather than on those values held by society or approved by legislative enactment. *Id.* Moreover, application of the best-interest test frequently allowed a child to be lost in the foster care system because the judge could not make or implement a timely decision on the child's permanent placement. *Id.* at 626–27.

To remedy this problem, Professor Wald proposed that states enact new statutes with specific standards outlining when the state should intervene to protect a child, under what conditions a child should be removed from the home, and what services should be provided to the family so that the child could be reunited with the family. *Id.* at 637–38. He also proposed if the court could not return the child to the family in the time outlined in the standards, the court should terminate the parent's parental rights so the child has a permanent placement as soon as possible. *Id.* Of course, his proposal provided specific exceptions that would allow a court not to terminate a parent's parental rights even if the standards were proved. *Id.* at 638. In summary, Professor Wald concluded termination should be the norm after a child has been in foster care for a given period unless termination would be harmful to the child under one of the specific exceptions contained in his proposal. *Id.* at 690. Professor Wald's premise was that the discretion the decision makers had under the best-interest test should be limited by making the laws specific as to when the state could intervene to terminate a parent's parental rights. *Id.* at 639. He included his proposal in statutory form in the appendix to his article. *Id.* at 700–06. At least one author has referred to Professor Wald's proposal as the "Model Child Placement

Code." Marsha Garrison, *Why Terminate Parental Rights?*, 35 Stan. L. Rev. 423, 450 n.129 (1983).

In 1978 the legislature revisited the statutes dealing with termination of parental rights as part of a comprehensive revision of the juvenile justice laws. 1978 Iowa Acts ch. 1088. The legislature adopted a termination-of-parental-rights statutory scheme for children in need of assistance consistent with Professor Wald's proposed model act. *See id.* ch. 1088, §§ 60–67 (codified as amended at Iowa Code §§ 232.109–.120). The legislature left the law regarding terminations for a child not adjudicated in need of assistance under chapter 600A unchanged, but required that terminations involving a child adjudicated in need of assistance be conducted pursuant to the provisions of chapter 232. *Id.* ch. 1088, § 94 (codified as amended at Iowa Code § 600A.5). Although the legislature has amended the statute since its adoption in 1978, its analytical framework remains the same today. To terminate a parent's parental rights under chapter 232, the court must first determine if one of the grounds enumerated in section 232.116(1) exists. If a ground exists, the court may terminate a parent's parental rights. Iowa Code § 232.116(1). In determining whether to terminate a parent's parental rights, the court must apply section 232.116(2). Section 232.116(2) provides:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child. This consideration may include any of the following:
>
> *a.* Whether the parent's ability to provide the needs of the child is affected by the parent's mental capacity or mental condition or the parent's imprisonment for a felony.

*b.* For a child who has been placed in foster family care by a court or has been voluntarily placed in foster family care by a parent or by another person, whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into the foster family. In considering integration into a foster family, the court shall review the following:

(1) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child.

(2) The reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference.

*c.* The relevant testimony or written statement that a foster parent, relative, or other individual with whom the child has been placed for preadoptive care or other care has a right to provide to the court.

*Id.* § 232.116(2).

Rather than a court using its own unstructured best-interest test, the court is required to use the best-interest framework established in section 232.116(2) when it decides what is in the best interest of the child. The primary considerations are "the child's safety," "the best placement for furthering the long-term nurturing and growth of the child," and "the physical, mental, and emotional condition and needs of the child." *Id.* Accordingly, a court should base its best-interest determination on the legislative requirements contained in section 232.116(2), rather than upon the court's own value system. Additionally, in making this determination the court's decision should contain specific reasons as to why the court made its determination under section 232.116(2). By doing so, we will assure parents that our courts are applying the legislative intent of the statute in termination actions decided under chapter 232.

Even though the court may determine that termination is appropriate under section 232.116(2), the court need not terminate a parent's parental rights if any of the circumstances contained in section 232.116(3) exist. Section 232.116(3) provides:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
>
> *a.* A relative has legal custody of the child.
>
> *b.* The child is over ten years of age and objects to the termination.
>
> *c.* There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
>
> *d.* It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
>
> *e.* The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

*Id.* § 232.116(3).

Iowa's statutory scheme recognizes the conflict between a parent's interest in continuing to raise their child as part of their family and the State's interest in providing a stable, loving homelife for the child as soon as possible. *See Santosky v. Kramer*, 455 U.S. 745, 787–89, 102 S. Ct. 1388, 1412–13, 71 L. Ed. 2d 599, 628–29 (1982) (Rehnquist, J., dissenting). A parent's right to raise his or her child is an important interest warranting deference and, absent a powerful countervailing interest, requires protection. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 2159–60, 68 L. Ed. 2d 640, 649–50 (1981). Our court has recognized a parent's right to raise his or her child in an early

case applying chapter 232's termination provisions. *See In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981) (stating, "[t]his court has often recognized that there exists a parental interest in the integrity of the family unit; nonetheless we also are cognizant that this interest is not absolute, but rather may be forfeited by certain parental conduct").

The State's interest in providing a stable, loving homelife for a child as soon as possible is just as important an interest. David J. Herring, *Inclusion of the Reasonable Efforts Requirement in Termination of Parental Rights Statutes: Punishing the Child for the Failures of the State Child Welfare System*, 54 U. Pitt. L. Rev. 139, 165–67 (1992). Justice Rehnquist has stated:

> On the other side of the termination proceeding are the often countervailing interests of the child. A stable, loving homelife is essential to a child's physical, emotional, and spiritual well-being. It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens. The same can be said of children who, though not physically or emotionally abused, are passed from one foster home to another with no constancy of love, trust, or discipline. If the Family Court makes an incorrect factual determination resulting in a failure to terminate a parent-child relationship which rightfully should be ended, the child involved must return either to an abusive home or to the often unstable world of foster care. The reality of these risks is magnified by the fact that the only families faced with termination actions are those which have voluntarily surrendered custody of their child to the State, or, as in this case, those from which the child has been removed by judicial action because of threatened irreparable injury through abuse or neglect.

*Santosky*, 455 U.S. at 788–90, 102 S. Ct. at 1412–14, 71 L. Ed. 2d at 628–30 (Rehnquist, J., dissenting) (footnotes omitted). We have also recognized the need to establish the child in a permanent stable home as

soon as possible in an early case applying chapter 232's termination provisions. *In re Dameron*, 306 N.W.2d at 747.

The purpose of adopting Professor Wald's statutory scheme was to set up a statutory framework, which when properly applied as written, would promote the child's best interest. A best-interest standard inconsistent with the express terms of section 232.116(2) vitiates compliance with chapter 232's statutory framework. Allowing a judge to disregard section 232.116(2)'s statutory framework in favor of the judge's own perception as to the best interest of a child permits the dangers of arbitrary and biased decision making to creep into a termination proceeding under the guise of the best interest of the child. *Wald Article*, 28 Stan. L. Rev. at 640–41, 649–50; *see also In re Juvenile Appeal*, 420 A.2d 875, 886–87 (Conn. 1979). For these reasons, we overrule any of our prior decisions that did not limit the best-interest test to the considerations contained in section 232.116(2).

Therefore, the proper analysis under section 232 is first for the court to determine if a ground for termination exists under section 232.116(1). If a ground exists, the court may terminate a parent's parental rights. Iowa Code § 232.116(1). In considering whether to terminate, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). Any findings in this regard should be contained in the judge's decision. Finally, before terminating a parent's parental rights, the court must consider if any of the exceptions contained in section 232.116(3) allow the court not to terminate. *Id.* § 232.116(3).

### III. Standard of Review.

The parties dispute the proper standard of review. The father claims the standard of review is de novo. The State claims the standard of review is generally de novo, but when it comes to the application of the best interest of the child under section 232.116(3), review is for an abuse of discretion. The State relies on numerous court of appeals decisions to support its position. The State is correct that our court of appeals has applied an abuse-of-discretion standard of review when applying an all-encompassing best-interest standard to override the express terms of section 232.116. *See, e.g.*, *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997); *In re A.J.*, 553 N.W.2d 909, 916 (Iowa Ct. App. 1996); *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993); *In re D.E.D.*, 476 N.W.2d 737, 738 (Iowa Ct. App. 1991); *In re J.V.*, 464 N.W.2d 887, 890 (Iowa Ct. App. 1991).

In adopting the abuse-of-discretion standard of review, the court of appeals stated:

> [W]e note that section 232.116(3) contains no mandatory language. We believe it is self-evident in the words "[t]he court *need not terminate* the relationship" that the legislature did not intend this to be a mandatory provision. Unlike the words "shall not terminate," which would impose a duty, [Iowa Code] § 4.1(36)(a), or "must not terminate," which would state a requirement, *id.* § 4.1(36)(b), the words "need not terminate" clearly are permissive. Thus, . . . it is within the sound discretion of the court, based upon the unique circumstances before it and the best interests of the child, whether to apply section 232.116(3)(e) to save the parent-child relationship.

*In re J.V.*, 464 N.W.2d at 890.

In adopting the abuse-of-discretion standard of review, it appears the court of appeals accepted our statement in *In re N.H.*, that section 232.116(3) gives the juvenile court the discretion to override a statutory

ground for the termination of a parent's parental rights if the termination is not in the best interest of the child. *See In re N.H.,* 383 N.W.2d at 574. In this decision, we now make it clear that there is no all-encompassing best-interest standard to override the express terms of the statutory language.

Section 232.116 requires the juvenile court to make various decisions in the process of terminating a parent's parental rights. First, the court must determine if the evidence proves one of the enumerated grounds for termination in section 232.116(1). If a ground is proven, the court may order the termination. Iowa Code § 232.116(1). Next, the court must consider whether to terminate by applying the factors in section 232.116(2). *Id.* § 232.116(2). Finally, if the factors require termination, the court must then determine if an exception under section 232.116(3) exists so the court need not terminate. *Id.* § 232.116(3).

Although the court has to use its best judgment in applying the factors contained in the statute, this does not mean we review its decision for an abuse of discretion. *See, e.g., Soifer v. Floyd County Bd. of Review,* 759 N.W.2d 775, 782–83 (Iowa 2009) (holding the standard of review is de novo when reviewing a lower court's application of factors that bear on competency of evidence of other sales); *Southard v. Visa U.S.A. Inc.,* 734 N.W.2d 192, 194, 198–99 (Iowa 2007) (holding the standard of review is for correction of errors at law when reviewing a lower court's application of five factors to determine whether a person has standing in an antitrust action). Therefore, we believe the proper standard of review for all termination decisions should be de novo. Accordingly, we overrule any prior cases holding otherwise.

**IV. Analysis.**

The first step in our analysis is to determine if a ground for termination exists under section 232.116(1). Because the father does not dispute the existence of the grounds under sections 232.116(1)(*d*), (*h*), and (*i*), we do not have to discuss this step. The second step in the analysis is to consider the factors under section 232.116(2). Section 232.116(2) requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

On our de novo review, we find the child was born May 23, 2007. In January 2008 the juvenile court adjudicated the child as a child in need of assistance and placed the child in the temporary care of the department of human services. The father was not in the child's life before the adjudication. The court offered the father services to correct the circumstances that led to the adjudication. These services included a batterer's education program, family safety, risk and permanency services, supervised visitation, and substance abuse evaluation and treatment. On October 22 the juvenile court held a dispositional review/permanency hearing, found that the father had not taken the necessary steps to reunite with the child, and ordered the county attorney to file proceedings to terminate the father's parental rights. The county attorney filed his petition on November 14.

The juvenile court held hearings on the termination petition in April and May 2009. We find the father is unable to provide a safe home for his child even with the services provided. On the few overnight visits he had with his child, his house was unkempt. He left clothes all over the house, coins scattered on the floor and windowsills, and trash

overflowing in the kitchen. He blamed his lack of housekeeping skills on being a single parent. This leads us to believe he cannot maintain a safe environment for his child while attempting to parent his child.

During the period of his supervised and unsupervised visits, the father was unable to further the long-term nurturing and growth of his child or the physical, mental, and emotional needs of his child. He failed to participate in the potty training of his child. He admitted that he had yet to acquire the parenting skills to take care of his child. He asked for more time to learn how to be a parent. He also asked for more time so he could get to know his child and she could get to know him. We agree with the case manager's assessment that the father has very poor decision-making skills and his poor decision making makes him unable to provide a safe and nurturing home for his child.

The child is at an adoptable age. The juvenile court terminated the mother's parental rights in the same proceedings. Terminating the father's parental rights so the child can be permanently placed gives primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2). It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child. *In re Dameron,* 306 N.W.2d at 747. Consequently, termination was proper under sections 232.116(1) and (2).

Finally, we must decide if any exceptions to termination exist under section 232.116(3). The only exception that can apply to these facts is section 232.116(3)(*c*). The exception provides: "[t]here is clear

and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(*c*).

We do not find a closeness of the parent-child relationship. Father and daughter were just getting to know each other. The father stated in the months of contact with his child he was just able to learn to love her. Accordingly, this exception will not prevent the termination.

Therefore, we agree with the juvenile court that clear and convincing evidence supports the termination of the father's parental rights.

### V. Conclusion and Disposition.

After applying the requirements of Iowa Code section 232.116, we find the juvenile court did not err when it terminated the father's parental rights. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the juvenile court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**