# IN THE COURT OF APPEALS OF IOWA

No. 15-0262
Filed May 6, 2015

**IN THE INTEREST OF S.C.,**
    **Minor Child,**

**K.O., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette Boehlje, District Associate Judge.

The mother appeals the order terminating her parental rights. **AFFIRMED.**

Michael J. Moeller of Sorensen Law Office, Clear Lake, for appellant

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Janet Hoffman, Assistant Attorneys General, Carlyle D. Dalen, County Attorney, and Nichole M. Benes, Assistant County Attorney, for appellee.

David A. Grooters, Mason City, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Kristin appeals from the order terminating her parental rights to her child, S.C.. She contends (1) the State failed to prove by clear and convincing evidence the statutory grounds authorizing termination of her parental rights, (2) termination of her rights is not in the best interest of the child, and (3) the court should have exercised its discretionary authority to decline termination of her rights based on the strength of the parent-child bond.

I.

This family came to the attention of the Iowa Department of Human Services ("IDHS") in March 2014 due to concerns regarding domestic violence between Kristin and the father of the child at issue. The parents were living together at the time of IDHS's intervention. The domestic violence was mutual, that is Kristin and the father each acted as the aggressor on occasion. They hit, kicked, and jumped on each other. They engaged in verbal altercations. They also destroyed each other's property or threatened to destroy each other's property. On at least one occasion, Kristin and the father left the infant child S.C. unattended in the house while they left the home and continued their verbal and physical fight. IDHS initiated an investigation, and additional concerns for the child's safety arose, including the parents' untreated mental health conditions, the father's substance use and abuse, and the parents' lack of parenting skills, among other concerns.

In April 2014, IDHS filed a founded report for denial of critical care, failure to provide adequate supervision, and removed S..C. from the parents' home. At

that time, S.C. was approximately four months old. On April 24, 2014, the child was adjudicated in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) (2013) (defining a child in need of assistance as one who has suffered or is imminently likely to suffer harmful effect due to the failure to exercise a reasonable degree of care in supervising the child) and section 232.2(6)(n) (defining child in need of assistance as one not receiving adequate care due to the parents' mental capacity or condition, imprisonment, or drug or alcohol abuse). Kristin was offered services to address the concerns of IDHS. The family care coordinator testified that Kristin's participation in services was "sporadic but typically uncooperative."

In October 2014, the State petitioned to terminate the parents' rights to S.C. The juvenile court terminated Kristin's rights pursuant to Iowa Code section 232.116(1)(a), (e), and (h).

II.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best

interest of the child. *See id.* Third, if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the discretionary exceptions set forth in section 232.116(3) should serve to preclude termination. *See id.*

The State has the burden of proving the grounds for termination by clear and convincing evidence. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *See id.* Because our review is de novo, we must satisfy ourselves the State has come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for termination of a parent's rights, a standard imposed to balance the parent's interest in maintaining the parent-child relationship and the State's obligation to protect children within the State of Iowa.

III.

A.

Kristin first contends the State failed to prove the statutory grounds for termination by clear and convincing evidence. It appears that the juvenile court's reference in the termination order to Iowa Code section 232.116(1)(a) and (e) was scrivener's error; the juvenile court's findings and conclusions relate only to termination pursuant to paragraph (h). In and of itself, the scrivener's error is not material to the resolution of this appeal. When the court terminates parental rights on more than one statutory ground, we may affirm on any ground supported by the record. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We

will thus limit our analysis to section 232.116(1)(h), which appears to be the only ground considered by the juvenile court.

To prove this ground for termination of parental rights, the State must prove by clear and convincing evidence, as relevant here, "the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4); *In re Chad*, 318 N.W.2d 213, 218 (Iowa 1982). A child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance. *See In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995); *see also In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "The threat of probable harm will justify termination, and the perceived harm need not be the one that supported the child's initial removal from the home." *M.M.*, 483 N.W.2d at 814; *see In re C.M.T.*, 433 N.W.2d 55, 56 (Iowa Ct. App. 1988).

S.C. could not be returned to Kristin at the time of the termination hearing because she had not yet addressed the domestic violence creating a risk of harm to the child. *See In re S.O.*, 483 N.W.2d 602, 604 (Iowa 1992) (noting serious emotional harm to child from violence in the home). After S.C. was removed from the home, Kristin moved to a shelter and then obtained her own apartment away from the father. However, Kristin refused to go to Crisis Intervention and engage in services because she believed both she and the father were at fault. More important, the evidence showed that Kristin and the father maintained regular, inappropriate, and harmful contact with each other. They maintained

contact in person and via Facebook, text message, and telephone. Their contact with each other continued to be violent and otherwise inappropriate, frequently involving arguments about whether Kristin and the father were dating other people. On one occasion, Kristin assaulted the father in a mall parking lot. On another occasion, immediately prior to the termination hearing, the parents got into an altercation at the mother's apartment and the police were called to the home. On a different occasion, Kristin threatened to break out the windows in the father's home. Both parents kept these communications and altercations hidden from IDHS until there was a significant blow-up between them, usually involving other paramours. IDHS's report to the court states that neither parent understands how their domestic violence incidents affect the welfare of S.C.

We also conclude that Kristin's untreated mental health conditions create a risk of harm to the child and support the termination of her rights pursuant to paragraph (h). *See, e.g.*, *In re T.P.*, 757 N.W.2d 267, 271 (Iowa Ct. App. 2008) (affirming termination of parental rights where non-compliance with recommended mental health treatment posed a risk to the child); *In re D.B.*, No 14-1311, 2014 WL 5253077, at *4 (Iowa Ct. App. Oct. 15, 2014) (affirming termination of parental rights where mother had untreated mental health condition); *In re R.G.*, No. 14-1134, 2014 WL 6682335, at *2-3 (Iowa Ct. App. Nov. 26, 2014) (same); *In re J.F.*, No. 13-1956, 2014 WL 667789, at *1-2 (Iowa Ct. App. Feb. 19, 2014) (affirming termination of parental rights where mother did not comply with mental health treatment requirements). The mother suffers from generalized anxiety disorder and major depressive disorder. Kristin attended

mental health treatment, but she did so only sporadically. The service providers testified that the mother was not motivated to have the child returned. She was not invested in services. She was not cooperative. She was not honest with the service providers. Most important, and perhaps as a result of her lack of meaningful participation in services, Kristin did not demonstrate improvement in the real world outside the clinical setting.

We highlight several examples of Kristin's behaviors. On one occasion, after meeting with her case workers, Kristin did not like the information presented to her, and she became visibly enraged and started screaming uncontrollably for approximately ten minutes after the workers left the home. The case workers remained outside the home and listened to the screaming. Kristin's mental health conditions also cloud her judgment with respect to who she dates. She dated one man, who possibly could be the father of her unborn child, who had warrants out for his arrest for drug offenses, thefts, and domestic violence. Finally, we place great weight on the juvenile court's direct observation of Kristin's behavior during these proceedings. The juvenile court found that Kristin displayed a lack of self-control that created a risk of harm to the child, describing Kristin's emotional responses as "over-the-top." The juvenile court found that Kristin threw screaming fits. She cried inconsolably and hysterically. Kristin did not find these behaviors to be troubling or unusual.

We should note the evidence is not wholly one-sided. Kristin did take action to address some of the issues presented. She moved out of the home she shared with the father and into a woman's shelter. After that, she obtained her

own housing. She also obtained and maintained employment throughout the course of these proceedings. Kristin attended her scheduled visitation with S.C. She did well with those visitations; she was prepared with appropriate items, including diapers, wipes, and snacks. The visits never progressed beyond semi-supervised, however, due to Kristin's behaviors and IDHS's concerns regarding people in the home. Ultimately, the record reflects that Kristin did not address the violence between her and the father or her own mental health needs and that these two concerns created a risk of harm to the child at issue. IDHS's termination report to the court concluded the "parents' lives remain very chaotic and unstable and they continue to make choices that are contrary to their child's welfare." "Kristin [has] not been able to gain and/or maintain the skills required to parent [the] child on a full-time basis." We thus conclude the State proved this ground for termination by clear and convincing evidence.

B.

Kristin next contends that termination of her parental rights is not in S.C.'s best interest. When considering a child's best interest, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We consider both the long-term and immediate interests of the child. *See In re J.E.,* 723 N.W.2d 793, 798 (Iowa 2006). Insight into what the future likely holds for a child if returned to a parent is gained from evidence of the parent's past performance, because it may be indicative of the quality of future care the parent is capable of

providing. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012); *J.E.*, 723 N.W.2d at 798. We give substantial weight to case history records in assessing a parent's ability to provide care in the future. *See In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993).

Kristin argues there is a statutory preference that a child remain in the care and custody of the parent. She also argues that there is no duplicating the beneficial effects of the mother-child relationship. We disagree that it is in S.C.'s best interest to forego termination of Kristin's parental rights. While the State must prove termination is in the best interest of the child, as a general rule, when the statutory grounds for termination of parental rights have been proved, termination of parental rights is in the best interest of the child. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992). Further, while Kristin is correct in stating the mother-child relationship can be beneficial to the health of the child, her argument presumes a healthy mother-child relationship in which the mother can care for the child without exposing the child to harm. That is not this case. In this case, Kristin has demonstrated over a sustained period of time that she cannot control her own behaviors to prioritize the care of her child.

We "cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41; *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining the parent's future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating that when considering what

the future holds if a child is returned to the parent, we must look to the parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future). Considering all factors in Iowa Code section 232.116(2), we conclude termination of Kristin's parental rights to S.C. is in the child's best interest.

C.

Kristin argues termination of her parental rights would be detrimental to S.C. because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c) (providing the court may avoid termination if "there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). This provision is permissive, not mandatory. *See In re D.S.,* 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). In other words, the court has discretion, based on the circumstances of each case, to apply the factors in section 232.116(3) to save the parent-child relationship. *See A.M.,* 843 N.W.2d at 113. In exercising that discretion, our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child would be disadvantaged by termination, and whether the disadvantage overcomes" the parent's inability to provide for the child's developing needs. *See D.W.,* 791 N.W.2d at 709.

The family's service providers testified there is a bond between Kristin and S.C. As discussed above, Kristin attended visitations with S.C. Kristin was prepared and brought appropriate items. The record also reflected the child had a greater bond with his foster family and is thriving. There is nothing unique to

this case that warrants saving the parent-child relationship.  The evidence shows the mother cannot resume care of the child due to her own behaviors and unaddressed mental health needs.

IV.

For the reasons set forth above, we affirm the order terminating Kristin's parental rights.

**AFFIRMED.**