# IN THE COURT OF APPEALS OF IOWA

No. 15-0706
Filed September 23, 2015

IN THE INTEREST OF J.E., A.E.,
and T.P.,
    **Minor Children,**

**J.E., Father,**
    Appellant,

**C.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Poweshiek County, Rose Ann Mefford, District Associate Judge.

A mother and father appeal from the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Dennis E. McKelvie of McKelvie Law Office, Grinnell, for appellant-father.

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant-mother.

Thomas J. Miller, Attorney General, Kathryn Miller-Todd, Assistant Attorney General, and Rebecca Petig, County Attorney, for appellee.

Fred Stiefel, Victor, for mother of C.P.

Dustin D. Hite of Heslinga, Dixon & Hite, Oskaloosa, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

The father of three children and the mother of the younger two of those children appeal from the juvenile court order terminating their parental rights.[1]  In December 2014, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h) and the mother's parental rights pursuant to section 232.116(1)(h) (2013).  They each contend the statutory grounds for termination are not supported by clear and convincing evidence.

I.

We review de novo proceedings terminating parental rights.  *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).  We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented.  *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).  We will uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination.  *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

A court's termination of parental rights under chapter 232 follows a three-step analysis.  *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010).  First, the court must determine if a ground for termination under section 232.116(1) has been established by clear and convincing evidence.  *See id.*  This is a threshold determination.  In the absence of proof establishing a ground authorizing the

---

[1] The parental rights of the mother of the father's oldest child also were terminated.  She did not appeal.

termination of a parent's rights, we do not proceed on to the second step. Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports terminating parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude terminating parental rights. *See id.* The father's parental rights were terminated pursuant to section 232.116(1)(f) as to the oldest child. The father and the mother's rights were terminated pursuant to section 232.116(1)(h) as to the younger two children. The parents do not contest there is sufficient evidence to establish the first three elements of paragraphs (f) and (h). They do contest whether there is sufficient evidence establishing the fourth element, common to both paragraphs: that the child cannot be returned to the custody of the child's parents at the present time. *See* Iowa Code § 232.116(1)(f)(4), (h)(4).

The Iowa Department of Human Services became involved with this family in November 2013, when the two older children were removed from the parents due to unsanitary conditions in the home. An investigation revealed the home was generally in poor and unsafe conditions, including dog feces on the floor. The parents also were using and/or distributing controlled substances from the house. The investigation revealed marijuana, packaging, and paraphernalia in the home. The youngest child was removed from the parents in February 2014, following his birth. He has never resided with the parents. Following the children's removal, the parents struggled to find suitable housing. They changed

residences frequently, living with friends and family, and living for three weeks in a campground during the summer, before securing housing in October 2013. The parents also struggled with visitation and went fairly long periods of time without exercising any visitation with the children.

By the time of the termination hearing in December 2014, the parents had addressed the issues giving rise to removal. Both had maintained full-time employment since the early part of 2014, working overnight shifts at a local factory. They were able to secure an apartment. The case workers conceded the apartment was appropriate and safe for the children. The parents had also made plans with their landlord to move into a large rental unit the next year when it became available. The parents reduced the number of pets in the home and kept the home clean. The mother successfully completed substance abuse treatment. The evidence showed the mother was a casual user only. She testified she had not used since the date of removal. She never tested positive for any controlled substances during the pendency of this proceeding. The parties dispute whether the father completed substance abuse treatment. The father was not "successfully discharged" from his substance abuse treatment program. However, he had discussions with his service provider, and she recommended "no further treatment" after he provided a clean drug test. The father has never tested positive for any controlled substance during the pendency of this proceeding.

Although the parents did finally address the issues precipitating removal, we conclude there is clear and convincing evidence the children could not be

returned to the parents at the time of the termination hearing. A child cannot be returned to a parent's custody if doing so would place the child at risk of harm that would justify finding the child in need of assistance or, if by doing so, the child would remain in need of assistance. *See* Iowa Code § 232.102(5), (7), (9); *see also In re R.R.K.*, 544 N.W.2d 274, 277 (Iowa Ct. App. 1995) *overruled on other grounds by P.L.*, 778 N.W.2d at 39. Our supreme court has said "'our statutory termination provisions are preventative as well as remedial." *In re L.L.*, 459 N.W.2d 489, 494 (Iowa 1990). They are designed to prevent probable harm to the child and the State is not required to wait until actual harm has occurred before moving to terminate a parent's rights." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Thus the harm justifying termination of parental rights need not be the one that led to the initial out-of-home placement. *See In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993); *In re C.M.T.*, 433 N.W.2d 55, 56 (Iowa Ct. App. 1988).

The record reflects the children would be at risk of harm due to the parents' inability to meet the children's basic needs, such as hygiene, food, and clothing, and the parents' lack of concern for the children's well-being. *See* Iowa Code section 232.2(6)(c)(2). The evidence showed the parents demonstrated little interest in the children during the pendency of this proceeding. For example, the parents did not call to inquire about the children between June 10 and June 19 and between June 21 and July 5. By way of further example, the parents exercised no visitation with the children between July 17 and September 2. The record further demonstrates many other missed visitations. When the parents did exercise visitation, they were not able to care for the children without

prompting. In the case worker's report to the court for the termination hearing, she made these monthly observations:

> September 2014—the parents "are not engaged in the everyday lives of the children, and are content just to visit them, but have shown no real interest in maintaining a parental role in their lives"
>
> October 2014—"FSRP [Family, Safety, Risk and Permanency] continues to observe a lack of parenting skills during visits, and parents need prompting to do such things as change diapers and burp the baby."
>
> November 2014—the parents "continue to need assistance with basic parenting from the FSRP provider, including prompting to feed, change, and burp. Children have begun to have behaviors that coincide with visits."
>
> December 2014—there appears to be no bond between the infant and the parents; the other children appear to have minimal bond; "the children have grown a custom [sic] to going long periods of time without any contact from their parents"; the parents "have not attended any necessary medical or other appointments related to the children throughout the life of the case."

We also conclude the termination of the parents' rights is in the children's best interests. *See* Iowa Code § 232.116(2) (identifying relevant factors). As stated above, the parents have not demonstrated the ability to care for the children. The evidence also showed the parents have little to no bond with any of the children. One service provider testified the father "doesn't engage with the children and doesn't see a need to engage with the children on a regular basis." Giving due consideration to the parent's performance during the pendency of the child-in-need-of-assistance proceedings, *see In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (noting that in making the best-interests determination, we look to the parent's past performance because it may indicate the quality of care the parent is capable of providing in the future), and to the factors set forth in section

232.116(2), including the children's integration into the foster family, *see* Iowa Code section 232.116(2)(b), we agree with the juvenile court's determination that termination of the parents' rights is in the best interest of the children.

We further conclude no factor in section 232.116(3) applies to allow the court to avoid termination. *See P.L.*, 778 N.W.2d at 39.

For the foregoing reasons we affirm the termination of the father's and mother's parental rights.

**AFFIRMED ON BOTH APPEALS.**