**IN THE COURT OF APPEALS OF IOWA**

No. 17-1758
Filed January 24, 2018

**IN THE INTEREST OF G.C. and D.C.,**
**Minor Children,**

**D.C., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Des Moines County, Jennifer S.

Bailey, District Associate Judge.


        A father appeals the termination of his parental rights to two children.

**AFFIRMED.**


        Heidi D. Van Winkle of Van Winkle Law Office, Burlington, for appellant

father.

        Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

        Shane Wiley, West Burlington, guardian ad litem for minor children.


        Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals the termination of his parental rights to two children, born in 2003 and 2004. He contends (1) the State failed to prove the ground for termination cited by the district court and (2) termination was not in the children's best interests.

## I.   *Grounds for Termination*

The district court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(*l*) (2017), which requires the State to prove the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

The father disagrees he had a "severe substance-related disorder." *Id.* § 232.116(1)(*l*)(2). On our de novo review of the record, we find clear and convincing evidence to satisfy this element. The father began using marijuana at the age of eleven and began using methamphetamine at twenty-one. He was forty-seven at the time of the termination hearing. When asked how long he had a diagnosis of substance use disorder he stated "thirty-one years."

A clinical psychiatrist with the Iowa Medical and Classification Center confirmed diagnoses of amphetamine use disorder and cannabis use disorder. Although the psychiatrist was not involved in the original mental health evaluation leading to the diagnoses, he handled a follow-up visit with the father and was familiar with his mental health conditions.

The father's admitted "struggle with addiction" was reflected in his criminal history. At the time of the termination hearings in 2017, he was incarcerated for "prohibited acts, manufacturing with intent to deliver." He testified to two 2004 convictions for possession of a controlled substance and a third conviction in the same year for possession of methamphetamine precursors. In 2015, he was convicted of manufacturing methamphetamine, and in 2016 and 2017, he was convicted of possession of a controlled substance.

The father's substance-abuse disorder was also reflected in his long-term involvement with the department of human services, which began shortly after the children's birth. The State filed a child-in-need-of-assistance petition based on parental drug use, which culminated in the termination of the mother's parental rights. Although the children were reunified with their father and remained with him for a decade, the father's self-reported period of sobriety ended in early 2015.

The father agreed to place the children in a voluntary guardianship with his sister and her husband, the same individuals who cared for the children after their birth. He was reunified with the children later in the year, but the reunification was shortlived.

The father relapsed and was arrested and jailed in March 2016. The children were again transferred to the care of their paternal aunt and uncle. The father stipulated to the facts contained in the State's child-in-need-of-assistance petition, and the district court found the children had suffered or were imminently likely to suffer harmful effects as a result of the father's failure to exercise a reasonable degree of care in supervising them. *See id.* § 232.2(6)(c)(2); *see also id.* § 232.116(1)(*l*)(1).

The father returned to drug use upon his release from jail a few months later. He participated in reunification services, and in January 2017, the court ordered the children returned to his care.

Again, the reunification was shortlived. The father relapsed within a month and was arrested the following month on a drug charge and probation violation. He was convicted, sentenced, and imprisoned.

The father's imprisonment prevented the children from being returned to his custody within a reasonable period of time. *See id.* § 232.116(1)(*l*)(1), (3). The earliest date on which he could be paroled or released to a residential correctional facility was April 2018. His tentative discharge date was October 2021. A department employee in charge of the case testified, "The boys are asking for closure and they're at the age when they can ask for that." She stated, "The boys have been in a guardianship situation and they had to return to dad and then their life was uprooted again four months later. So they do not trust that."

We conclude the State satisfied its burden of proving the elements of section 232.116(1)(*l*).

## II. Best Interests

Termination must also be in the children's best interests. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The father acknowledged his drug use "had an effect on" the children. He nonetheless argued for a permanent guardianship in lieu of termination of his parental rights, in case the children wished to come back to him in the future.

As noted, the department employee saw this option as prolonging the children's turmoil. She testified, "Neither one of these boys want to hurt their dad,

but . . . they're done living this life." In her words, they just "want [department] intervention to stop." At the second of two termination hearings, she reiterated, "[T]hey want to be done. They want to be safe. They want to be secure. As far as getting DHS out of their life, that has happened before with a guardianship also. But they do not want to have to worry about anybody coming to get them." As for the possibility of physical harm to the children if returned, she noted the father had a methamphetamine lab in his home in 2016.

We conclude termination of the father's parental rights to the children was in their best interests.

**AFFIRMED.**