# IN THE COURT OF APPEALS OF IOWA

No. 21-0810
Filed September 1, 2021

**IN THE INTEREST OF C.R. and G.R.,
Minor Children,**

**J.G., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Warren County, Mark F. Schlenker, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Nancy L. Pietz, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Barbara Durden Davis of Barbara Durden Davis, P.C., West Des Moines, guardian ad litem for minor children.

Cathleen Siebrecht of Siebrecht Law Firm, Des Moines, attorney for minor child G.R.

Zachary C. Priebe of Jeff Carter Law Offices, P.C., Des Moines, attorney for minor child C.R.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights. We find the grounds for termination have been established, an extension is not warranted, termination is in the best interests of the children, and the exceptions to termination do not apply. We affirm.

**I. Background Facts & Proceedings.**

J.G. is the mother of C.R. and G.R., who were born in 2010. D.R. is the biological father of the children.[1]

In June 2019, the department of human services (DHS) investigated the mother following allegations of her methamphetamine use and domestic abuse between the mother and her significant other, L.R., in front of the children. The State filed child-in-need-of-assistance (CINA) petitions for C.R. and G.R., who were adjudicated as CINA on August 5 but remained in the mother's custody under supervision by DHS.

C.R. and G.R. were removed from the mother's custody in October and were eventually placed in the custody of the father's paternal aunt. The children both communicated with the court they are happy in their placement.

The children recently learned their "father" L.R. is actually their grandfather. In June, the mother had a temporary protective order issued against L.R. alleging domestic violence; on June 24, the trial court found insufficient evidence of an assault and denied a permanent protective order. On July 17, the juvenile court issued a protective order barring L.R. from the children's home and presence. The

---

[1] The court terminated D.R.'s parental rights; he has not appealed.

mother then married L.R. in late July. In September, L.R. forced the mother into a car accident, resulting in a protective order to keep L.R. away from the mother. The mother claims she is in the process of divorcing L.R.

Starting in August 2019, the mother was ordered to participate in drug testing. In September, the mother was found in contempt of court for failing to appear for drug testing.[2] A sweat-patch test later that month was positive for amphetamines and methamphetamine. Later tests came back negative (December), and then positive again (March 2020). The mother refused to complete drug tests in May, August, and October 2020, claiming the lab mixed up tests. She has not completed any substance-abuse treatment throughout the proceedings and insists she has not used illegal substances.

In November 2019, the mother completed a domestic-violence awareness class. In December, the mother completed a mental-health evaluation, and the evaluator recommended regular therapy sessions. The mother engaged in treatment but, in spring 2020, the mother stopped her in-person therapy and did not engage in treatment via telehealth. Her reasons for not attending therapy were health concerns for in-person therapy during the COVID-19 pandemic, her lack of transportation to get to appointments, and her lack of comfort with any of the therapists she had met. The mother claims she does not need therapy despite her mental-health diagnoses and history of traumatic domestic violence but says she uses daily prayer as her mental-health treatment.

---

[2] The evidence shows the August 2019 drug test was ordered under the mother's maiden name, J.F. The mother attempted to test, but the name on her driver's license was J.G. and she was not allowed to participate.

The mother was not consistent with in-person visitation attendance, often due to transportation issues. She called and video chatted with the children on a regular basis. Many of the in-person and video chats were also attended by the mother's adult children. The mother was an attentive and capable parent during visits.

The mother has not cooperated with DHS or the court throughout the proceedings. She told the court she did not trust DHS, and she displayed a combative attitude toward DHS workers and service providers, at times sending high-emotion and accusatory messages to workers. At one point, she filed a notice with the court threatening legal action against the court system and DHS if her children were not returned to her care. The mother prolonged the legal proceedings of this case by filing for multiple continuances, filing pro se interlocutory appeals and ex parte letters to the court, and changing counsel several times.

The mother experienced significant housing insecurity during the CINA case, including evictions from the family home rented under L.R.'s name and from another rental when it was sold. At times, she would "refuse to tell anybody" where she lived because she wanted to be left alone, mentioning L.R.'s presence near her homes. The mother did not have a home at the time of the termination hearing. The mother was not employed at any point during the CINA proceedings. She failed to share how she might provide for the children if they were returned to her care.

After a termination hearing on April 1 and 2, 2021, the court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2021). She appeals.

**II. Standard of Review.**

"We review proceedings terminating parental rights de novo. We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re Z.P.*, 948 N.W.2d 518, 522–23 (Iowa 2020) (citations omitted).

**III. Analysis.**

On appeal, the mother claims the State failed to prove by clear and convincing evidence the children could not be returned to her care, the court should have granted her an extension under Iowa Code section 232.104(2)(b), the court should have applied an exception to termination because the children are in a relative's custody and they have close parent-child bonds, and termination is not in the best interests of the children.

*A. Ground for termination.* The court terminated the mother's rights under Iowa Code section 232.116(1)(f). Pursuant to that provision, the State had to prove the children were four years of age or older, had been adjudicated CINA, had been out of the mother's custody for at least twelve of the last eighteen months, and there was clear and convincing evidence the children could not be returned to the mother's custody at the time of the termination hearing. Iowa Code § 232.116(1)(f). The mother only contests the final element—that the children could not be returned to her care "at the present time" without suffering further

adjudicatory harm. *Id.* § 232.116(1)(f)(4). "[A]t the present time" refers to the time of the termination hearing. *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014).

At the time of the termination hearing, the mother did not have housing for herself or the children. She had no employment and refused to discuss her plan of how she would provide for herself and the children. It is unclear where the mother planned for the children to attend school. She was not in any mental-health treatment despite emotional outbursts as evidenced in her self-represented filings. The mother had refused to participate in drug testing or treatment for over a year after a positive test for methamphetamine. We conclude the children could not returned to the mother's custody at the time of the termination hearing.

*B. Six-month extension.* The court determined it could not grant a six-month extension under section 232.104(2)(b) because it could not enumerate factors, conditions, or behavioral changes that would form a basis to find removal would no longer be necessary. After noting the case had been open for eighteen months, the court stated, "As of the hearing in April of 2021 on this petition nothing has changed since removal, and the problems remain unsolved, with little prospect of them being resolved in the next six months."

The legislature has established a limited time frame in termination proceedings for a parent to demonstrate their ability to be a parent, "stem[ming] in large part from mandates in federal law." *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (citation omitted). Once that time frame has passed, "termination proceedings must be viewed with a sense of urgency." *Id.* (citation omitted).

The mother had already been granted a six-month extension in October 2020 to allow her to comply with substance-abuse and mental-health services;

unfortunately, she made no progress. The only factor the mother cites as likely to change in the next six months is a divorce from L.R. While a good step, this would not address the mother's refusal to seek substance-abuse and mental-health treatment, or establish employment or a home. An extension is not warranted in this case.

*C. Best interests.* The mother claims it is not in the children's best interests to terminate her parental rights.

In considering the best interests of the children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

The children are in a safe, stable home with a relative placement who meets their physical, mental, and emotional needs, ensures they receive therapy as needed, and nurtures their relationships with family members. The mother is not in a stable situation and has refused to tell DHS or the court how she plans to provide for the children's short- and long-term care. We find termination of the mother's parental rights is in the children's best interests.

*D. Exceptions to termination.* The mother asserts the court should have applied two of the permissive exceptions under section 232.116(3) to not terminate

her rights: (a) a relative has legal custody of the children and (c) termination would be detrimental to the children due to the closeness of the parent-child relationships.

The exceptions to termination are permissive, not mandatory. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination." *Id.* at 476.

The willingness of a relative to take custody of the children does not countermand a determination that termination of a parent's rights is in the children's best interests. *See id.* at 475. Nor is this an instance where a guardianship would be an appropriate alternative. *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) (noting a possible example where guardianship might be appropriate but a long-term guardianship would deny the parent of additional services and the parent could challenge the guardianship later). Nothing in the record indicates the paternal aunt would agree to a guardianship. Rather, the record reflects she is prepared to adopt the children, which would provide them with permanency. The mother has not carried her burden to establish the applicability of this exception.

It is clear from the record the mother has a close bond with her children. However, our supreme court has observed, "Yet the existence of a bond is not enough." *A.B.*, 956 N.W.2d at 169. The parent has to prove the bond is so strong that it clearly outweighs the child's need for permanency. *W.M.*, 957 N.W.2d at 315. The juvenile court found termination "would be less detrimental than the harm that would be caused by continuing the parent-child relationships." The mother

has not proved the parent-child bond here is so strong as to clearly outweigh the children's need for permanency.  *See id.*

We conclude termination is in the children's best interests and affirm.

**AFFIRMED.**