# IN THE COURT OF APPEALS OF IOWA

No. 20-0922
Filed October 7, 2020

**IN THE INTEREST OF N.L. and E.B.,**
**Minor Children,**

**M.F., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Anne Mefford, District Associate Judge.

The mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Lynnette M. Lindgren of Faulkner, Broerman & Lindgren, Oskaloosa, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Denise McKelvie Gonyea of McKelvie Law Office, Grinnell, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., Greer, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

The mother appeals the termination of her parental rights to her children N.L and E.B., born in 2018 and 2019 respectively. The juvenile court terminated her rights pursuant to Iowa Code section 232.116(1)(h) and (l) (2020).[1] The mother does not contest that these statutory grounds have been met. She argues the juvenile court should have established a guardianship in her brother in lieu of termination and maintains that permanency option is in the children's best interests in part because of the strong bond the children share with her. Our review of termination proceedings is de novo. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011). And our paramount concern is the children's best interests. *Id.*

> Pursuant to Iowa Code section 232.117(5):
>
> If after a hearing the court does not order the termination of parental rights but finds that there is clear and convincing evidence that the child is a child in need of assistance . . . the court may adjudicate the child to be a child in need of assistance and may enter an order in accordance with the provisions of section . . . 232.104.

Section 232.104(2)(d)(1) allows the court to "[e]nter an order, pursuant to findings required by subsection 4, to" "[t]ransfer guardianship and custody of the child to a suitable person." And subsection 4 lays out the following, which must be found before the court can transfer guardianship:

> a. A termination of the parent-child relationship would not be in the best interest of the child.
> b. Services were offered to the child's family to correct the situation which led to the child's removal from the home.
> c. The child cannot be returned to the child's home.

---

[1] The children do not share a biological father. The parental rights of N.L.'s father were terminated in the same proceeding. He does not appeal. The parental rights of E.B.'s father were not terminated; he was only recently identified at the time of the termination hearings and the proceedings insofar as they related to him were continued for six months.

Iowa Code § 232.104(4); *see also In re A.S.*, 906 N.W.2d 467, 477 n.4 (Iowa 2018).

Here, we conclude termination of the mother's parental rights is in the children's best interests, so a guardianship is not allowed under the statutory provisions. *See* Iowa Code § 232.104(2)(d)(1), (4)(a); *see also A.S.*, 906 N.W.2d at 477 ("Because we conclude that termination of [the mother's] parental rights is in the child's best interests, we decline to allow a guardianship under [Iowa Code sections 232.117 and 232.104].").  In considering what is in these children's best interests, our primary considerations are their safety; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition and needs.  *See* Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).

The twenty-six-year-old mother is addicted to methamphetamine and has been since she started using the drug regularly at age twenty.  In spite of her many attempts at treatment over the two years of this case, she has been unable to achieve sobriety for more than a few months at a time.  The mother testified she was sober at the time of the June 2020 termination hearing, but she was not immediately able to say how long it had been since she last used.[2]  The children are young; two-year-old N.L. has spent about half of her life outside of the mother's care and E.B., who was nearly one year old at the time of the termination hearing,

---

[2] The mother was asked how many days she was clean and she responded, "I think 89 days.  No.  It's 87.  No, 84.  Hold on.  I will tell you in two seconds.  It's 84 days."  The mother had most recently entered treatment eighty-four days before and was calculating her sobriety based on that date.  She tested positive for methamphetamine at the time she entered treatment and then was kicked out of the program without completing it a few weeks later.  She had yet to reengage in substance-abuse treatment at the time of the termination hearing.

was removed from the mother's care at birth and never returned. *See A.S.*, 906 N.W.2d at 478 (declining to establish a guardianship where the child was two years old and "deserve[d] a normal life with an adoptive family"). The children's maternal uncle and his fiancée have cared for the children since their removals from the mother, and testimony at the termination hearing indicated the children are more bonded with them than they are the mother. *See* Iowa Code § 232.116(2)(b) (considering whether the child's family identity is with the foster family and if they have been integrated into that family). The mother missed more than half of her professionally supervised visits with the children between November 2019 and the termination hearing in June 2020. And while she was originally welcome to visit the children at the uncle's home whenever she wanted as long as the uncle or his fiancée were able to supervise, this offer was rescinded after the mother sent angry, threatening text messages to the fiancée in early 2020. Still the uncle, who testified he planned to adopt the children, indicated he did not want to keep the children from the mother and would ensure the children and mother have some relationship going forward.

Long-term stability and permanency are in these children's best interests. Terminating the mother's parental rights will help these children achieve those goals. *See In re V.K.*, No. 19-1630, 2019 WL 6358453, at *3 (Iowa Ct. App. Nov. 27, 2019) ("A guardianship, rather than termination, would not promote stability or provide permanency to the children's lives."); *see also In re R.S.R.*, No. 10-1858, 2011 WL 4416804 (Iowa Ct. App. Feb. 9 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child[ren] to the parent's custody."). Because termination of the mother's parental

rights is in the children's best interests, we cannot establish a guardianship in lieu of termination.  We affirm the termination of the mother's parental rights.

**AFFIRMED.**