**IN THE COURT OF APPEALS OF IOWA**

No. 22-1620
Filed December 7, 2022

**IN THE INTEREST OF J.H.,**
**Minor Child,**

**A.S., Mother,**
    Appellant,

**J.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Mark D. Fisher of Howes Law Firm, P.C., Cedar Rapids, for appellant mother.

Michael M. Lindeman of Lindeman Law, Cedar Rapids, for appellant father.

Thomas J. Miller, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Kimberly Ann Opatz of the Linn County Advocate, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

The mother and father of J.H., born in February 2021, separately appeal the termination of their parental rights. The father primarily argues the State failed to prove a statutory ground for termination and failed to provide reasonable efforts for reunification. The mother argues termination of her parental rights is not in the child's best interests and a permissive exception should prelude termination. We affirm.

### I. Course of Proceedings

This family came to the attention of the Iowa Department and Health and Human Services (Iowa HHS) when the child was born. Medical personnel reported the mother appeared to be under the influence during delivery, after which the child was hospitalized for a variety of complications. The child tested positive for methamphetamine at birth. The mother tested positive for amphetamines.

The juvenile court soon adjudicated the child as being in need of assistance, removed the child from the parents' custody and care, and ordered the parents to participate in drug testing. The next month, the mother tested positive for amphetamine and methamphetamine. Around the same time, she was referred to Family Treatment Court but did not participate in services. The child went into a foster home after being released from the hospital.

In the following months, the mother tested positive for methamphetamine multiple times and failed to report for testing on several occasions. The father initially tested negative for drugs, albeit on an inconsistent schedule. Police became involved with the mother and father later in the year due to reports of domestic violence, and a no-contact order was issued. Despite this, police later

found the mother and father together and arrested the father on a warrant. He later pled guilty to disorderly conduct. However, the father made some overall progress, so the permanency goal for the child was changed to "return to father" and a trial home placement began in May 2022. The State's first petition for termination was then dismissed.

The last week of May, the father tested positive for methamphetamine. The father contested the results from a sweat patch and requested a hair follicle test, which confirmed both ingestion of and exposure to methamphetamine. The child's hair was tested in June and similarly confirmed both ingestion of and exposure to methamphetamine. The father blames the mother for the positive test results, but the father and mother both gave inconsistent versions of events when questioned. Evidence at trial also confirmed that having sex with a methamphetamine user (how the father alleges the mother caused his patch to test positive) will not generate a positive result for ingestion. In their respective testimony, each parent variously inculpated themselves and each other for use and abuse of various drugs. Throughout the life of this case, the father tested positive for methamphetamine on at least six occasions and the mother at least twice. The father also tested positive for marijuana.

Based on the test results and the length of time the child spent out of parental custody, the State filed a second petition for termination. The guardian ad litem also recommended termination.

Both parents testified at trial, essentially blaming each other for the child's positive drug test and generally denying the accuracy of the testing. The juvenile court found neither parent credible. The court also found both parents failed to

comply with material aspects of the case plan expectations. Finally, the court found neither parent demonstrated an ability to provide for the custody and care of the child.

The juvenile court terminated both parents' parental rights pursuant to Iowa Code section 232.116(1)(h) (2022). Both parents appeal.

## II. Standard of Review

We review termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We place weight on the juvenile court's findings of fact, especially with regard to witness credibility, but we are not bound by them. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

## III. The Father's Arguments

The father's petition indicates he only contests the fourth and final element of the statutory termination framework, whether the child could be returned to his care. *See* Iowa Code § 232.116(1)(h)(4). He urges there is no safety risk in returning the child to his custody. We, like the juvenile court, disagree.

The father's repeat positive methamphetamine results, as well as the child's positive test result, reflect an ongoing risk to the child's safety. The father's attempts to blame others (including the mother) for the child's positive test result are concerning, as is his refusal to acknowledge his ongoing substance-abuse problems. Even if we were to believe the father's attempt to blame the mother, it was in part the father's pursuit of the mother (despite his domestic-abuse arrest and a no-contact order) that led to the events the father claims caused the positive test results. Also, even when the father was arguably acknowledging his substance-abuse problems, his visitation with the child remained fully supervised

at the time of termination. The record supports the juvenile court's conclusion that the child could not be returned to the father's custody. See *In re C.S.*, No. 16-1593, 2017 WL 362008, at *2 (Iowa Ct. App. Jan. 25, 2017) (unresolved substance abuse prevents a parent from providing safe conditions for a child).

The father also contests whether reasonable efforts were made to return the child to his home. The State acknowledges the father asked for an increase in visits and decrease in supervision. However, the State argues the reason visits remained fully supervised "was not due to the State's failure to provide reasonable efforts" but instead "due to the father's failure to address a problem that he refused to acknowledge." On our de novo review, we agree. In the end, the father's lack of progress beyond fully supervised visits was not due to any error or inaction by Iowa HHS, but instead due to the father's repeat positive methamphetamine tests. Following a hearing on the father's second request, the juvenile court afforded Iowa HHS discretion to "move forward with [less restrictive] visitation" if the father continued to test negative for drugs, as he had in the two months following his May 2022 positive test. Iowa HHS continued with supervised visits due to the extreme danger posed by exposure or ingestion of methamphetamine and the father's "lack of accountability." We affirm the juvenile court on this ground.

To the extent the father's petition also contests whether termination is in the best interests of the child, we reject that contention as well. *See* Iowa Code § 232.116(2). The father's repeat positive methamphetamine tests, the child's positive test, and the father's failure to accept responsibility for either of the foregoing all support the juvenile court's termination order. As does the fact that the child is well integrated into the foster home where the child has been placed,

by Iowa HHS's estimation, for at least 93% of the child's life. *See id.* § 232.116(2)(b) (the best-interests determination includes "whether the child has become integrated into the foster family").

Finally, to the extent the father advances an argument about his bond with the child, he implicates a permissive exception to termination. *See id.* § 232.116(3)(c). Assuming he preserved error, we conclude on our de novo review that the father failed to carry his burden to prove this exception. And even if the father had carried his burden, we find countervailing considerations (particularly the ongoing danger presented by the father's substance abuse) outweigh any bond with the child, and we do not apply this exception.

## IV. The Mother's Arguments

The State urges that the mother's petition on appeal is so conclusory and devoid of legal citation we ought not consider it. We could conclude the mother waived her arguments on appeal. *See* Iowa R. App P. 6.903(2)(g)(3). However, we instead elect to proceed to the merits—at least insofar as we can understand the mother's arguments without assuming a partisan role. *See Hanson v. Harveys Casino Hotel*, 652 N.W.2d 841, 843 (Iowa Ct. App. 2002).

Generously reading the mother's petition, we understand her to challenge whether termination is in the best interests of the child and whether a permissive exception to the termination statute applies. We reject both arguments. And, to the extent the mother purports to raise arguments on behalf of the father, the State correctly points out she lacks standing to do so. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007).

First, as to the best interests of the child, we again conclude the record supports the juvenile court's determination that termination is in the child's best interests. In determining the child's best interests, the Code mandates we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Iowa HHS has been involved with this family since the child's birth, and the mother made little to no progress toward providing the child a safe living environment. It seems the only route by which the child may achieve stability and permanency is through termination and placement in a home free from substance abuse—a home the mother cannot provide. *See In re O.H.*, No. 16-2127, 2017 WL 1104910, at *3 (Iowa Ct. App. Mar. 22, 2017) (finding termination in the child's best interests when the parent could not provide a home "free from the specter of . . . substance abuse").

Second, assuming any claim about permissive exceptions was adequately preserved, the mother has the burden of proof by clear and convincing evidence, and she failed to carry that burden. *See A.S.*, 906 N.W.2d at 476. Although the mother's petition on appeal briefly references an alleged bond between her and the child, her failure to participate in any visits in the four months preceding termination tells a different story. Also, there is scant credible evidence supporting such a bond with the mother. Last, even if the mother had carried her burden to prove an exception, the pervasiveness of the methamphetamine abuse in this record convinces us the exception should not apply and we affirm the termination.

**V. Conclusion**

We affirm the termination of both the mother's and the father's parental rights.  The pervasive methamphetamine abuse by both parents, as well as the other record evidence, supports the juvenile court's termination order.

**AFFIRMED ON BOTH APPEALS.**