## IN THE COURT OF APPEALS OF IOWA

No. 22-1868
Filed March 29, 2023

**IN THE INTEREST OF D.B.,**
**Minor Child,**

**S.H., Mother,**
          Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachel E. Seymour, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Eric S. Mail of Puryear Law P.C., Davenport, for appellant mother.

Brenna Bird, Attorney General, and Ellen Ramsey-Kacena (until withdrawal) and Mary A. Triick, Assistant Attorneys General, for appellee State.

Bo Woolman of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BOWER, Chief Judge.**

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(g) (2022).[1] The mother challenges that ruling, contending she has been responsive to services and should have been granted additional time. We affirm.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted). Our paramount concern is the best interests of the child. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

The mother has five biological children, none of whom are in her custody. Her oldest child is in a guardianship. In 2016, the mother's parental rights to A.S. and G.F. were terminated due to her general lack of protective capacity and her unresolved substance-abuse, domestic-violence, and mental-health issues after being offered services to address those issues.[2] The mother gave birth in February 2019 to L.M., who tested positive for methamphetamine at birth. The mother was offered services to address the same issues as in the earlier proceedings, but she

---

[1] Section 232.116(1)(g) allows the court to terminate parental rights where there is clear and convincing evidence the child was adjudicated a child in need of assistance (CINA), the court had previously terminated the parent's parental rights to a child in the same family, the parent lacks the ability or willingness to respond to services that would correct the situation, and a period of rehabilitation would not correct the situation.

[2] While living with G.F.'s father, Y.F., who was on the sex offender registry, the mother did not believe A.S. had been subjected to sexual abuse by him. When G.F. and A.S. were removed from the home, both tested positive for methamphetamine. The mother asserted the children must have been exposed by the downstairs neighbor's use coming through the floorboards. The mother was not truthful with service providers during those juvenile proceedings about her continued relationship with Y.F.

declined to participate. Her parental rights to L.M. were terminated in November 2019.

The mother had been using methamphetamine intravenously and continued to do so after finding out she was pregnant with D.B. When born in March 2021, the child's umbilical cord tested positive for methamphetamine and amphetamines. The child was removed from the mother's care and adjudicated a CINA. The mother entered a residential treatment program and began to engage in substance-abuse programming and mental-health treatment.

D.B.'s father has a long history of substance abuse; did not participate in services; and, at a September 2021 permanency hearing, the court concluded the evidence did not support a six-month extension for the father.[3] Because the mother was showing some progress in September, she was granted additional time to achieve reunification. The child was returned to the mother's custody in October on the condition she remain living at the treatment facility.

The mother had progressed through programming, reported she had ended any relationship with D.B.'s father, had been providing clean drug tests, and was making plans to leave the residential facility when, in April 2022, service providers learned of her ongoing involvement with D.B.'s father. The child was removed from the mother's custody on April 28; D.B.'s hair stat test was positive for methamphetamine. The mother denied knowing how the child could test positive for the substance.[4] Service providers also discovered the mother had gone to her

---

[3] The father's parental rights were terminated on June 8, 2022. He is not involved in this appeal.

[4] She did assert the child had been carrying around the uncle's inhaler while in his care (the uncle was specifically not approved to provide care for the child due to

mother's home with the child, contrary to facility pass limitations and even though the maternal grandmother was not approved to be around the child.[5]

A petition to terminate the mother's rights was filed on June 10. The termination trial was held on August 3. The health and human services social worker, Monica Kordick; the mother; and her substance-abuse and mental-health counselors testified. Kordick stated she had addressed boundaries with the mother each month during their visits, at court hearings, and during staffings. Kordick testified the mother's continued lack of protective capacity prevents her from parenting safely. She also testified the child is currently placed with a family who is willing to adopt if termination occurs. The family and the adoptive parents of A.S. and G.F. are friends and open to a relationship between the children.

Kordick and the child's guardian ad litem recommended termination of the mother's parental rights.

On October 29, the juvenile court entered its ruling, finding the mother "has made some important progress, in particular, maintaining her sobriety for an extended period." Yet,

> she has made very little progress in identifying who is an unsafe
> person and setting necessary boundaries to keep this child safe.
> This is evidenced by her ongoing contact with her own mother and
> prior unsafe paramours, her inability or unwillingness to identify signs
> of ongoing drug use, her unwillingness to accept the child tested
> positive for methamphetamine while in her custody, and her lack of
> honesty with providers who are attempting to address this protective
> concern.

---

prior mental-health issues). She contended the substance in the inhaler could produce a false positive for methamphetamine.

[5] The maternal grandmother had a history of substance abuse and lack of protective capacity.

The court noted the mother had been involved with services to address her lack of protective capacity since 2015 and had been granted an extension to address that concern in September 2021. The court concluded:

> Mother has exposed the child to methamphetamines, causing the child to test positive both at birth and in April of 2022. Mother takes no responsibility for child's second positive drug screen, continuing to believe it is a false positive. Mother admits she is unable to even determine when [child's father] is actively using. She has such a long pattern of being dishonest about continuing unsafe relationship[s], the court gives her statements that she will not have contact with such persons in the future, no credibility. Mother is either unable or unwilling to take the necessary steps to end or avoid unsafe relationships and environments. [The court] finds neither additional time nor services would correct the situation given the length of time and extent of services already offered.

The mother asserts that unlike her previous juvenile court involvements, she has been able to show sobriety and has engaged in services over several months. We encourage her to continue to do so. But we note the mother's sobriety has occurred in a relatively controlled environment.

The mother testified she was not able to determine if D.B.'s father was actively using, which concerned her substance-abuse counselor. And the person who had provided both substance-abuse and mental-health services to the mother was not aware the mother was maintaining contact with the child's father, did not know the mother was not complying with the facility's expectations, and was concerned about the mother's failure to be forthcoming in their therapeutic relationship.

The mother argues there is no evidence of her ongoing use of methamphetamine and claims "it is not clear from the record that [she] was ultimately responsible for the presence of the illegal substance" in the child's system in April 2022. Yet, the child was in her care and under her supervision at

the time, and she allowed the child around unapproved individuals, resulting in the child testing positive for methamphetamine. Moreover, the mother testified that being around people who were active users and with whom she had used were triggers for her use, but she was surreptitiously in contact with the father, knowing he fit that description.

We conclude the mother has been unable or unwilling to internalize and demonstrate adequate protective capacity to provide the child with a safe environment. She was already granted an extension in September 2021. Extending the child's uncertainty longer in hopes the mother will gain that protective capacity is unwarranted. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). There is clear and convincing evidence to terminate the mother's parental rights pursuant to section 232.116(1)(g).

D.B. is entitled to permanency now. Giving "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," Iowa Code § 232.116(2), we conclude termination of the mother's parental rights and adoption is in the child's best interests. We affirm.

**AFFIRMED.**