# IN THE COURT OF APPEALS OF IOWA

No. 23-1396
Filed November 8, 2023

**IN THE INTEREST OF J.S.,**
**Minor Child,**

**J.S., Father,**
    Appellant,

**A.N., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Kimberly Shepherd, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Jennifer Triner Olsen, Davenport, for appellant father.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

Taryn Rena McCarthy of Clemens Walters Conlon Runde & Hiatt, Dubuque, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights. Because clear and convincing evidence supports a statutory ground for termination, termination is in the best interests of the child, and an application of a permissive exception is not warranted, we affirm.

## I. Background Facts and Prior Proceedings

J.N.-S. was born in January 2022. After the birth of J.N.-S., the parents refused to participate in a safety plan. Due to concerns about an unresolved history of methamphetamine use by the mother, J.N.-S. was formally removed from his parents' custody and placed with his maternal grandmother following his discharge from the hospital after his birth. He has never been returned to parental custody, and there have been no trial home placements.

The mother has a history with the Iowa Department of Health and Human Services (HHS) because of her methamphetamine use. She had a previous child involved in a child-in-need-of-assistance (CINA) proceeding in 2021. At the time of that action, J.N.-S.'s father was in a relationship with the mother, although he is not the father of the older child, J.N.-S.'s half-sibling. That file was closed when the child was placed in a guardianship with a relative. J.N.-S.'s removal paralleled concerns in the first case, related to substance-abuse and mental-health issues. J.N.-S. was adjudicated CINA in April 2022.

Following removal, HHS attempted to work with the parents on a case plan to provide J.N.-S. with a home free from dangerous substances with safe and sober caretakers. This process included substance-abuse evaluations and treatment recommendations, therapy, drug testing, and visits with J.N.-S. But the

parents repeatedly dodged drug testing, including one instance where, in anticipation of a hair stat test, the father shaved his head. When they did participate in drug testing, the parents had varying results. The mother tested positive for amphetamine and methamphetamine[1] several times, and the father tested positive for methamphetamine in August 2022.[2]

Although at times the parents have stated to caseworkers that they are no longer in a relationship, they have continued to reside together, and at the termination hearing, the father testified they were in a relationship and together "almost twenty-four hours a day." Despite the mother's repeated positive drug tests, the father has insisted the mother is not using methamphetamine. And he denies use by himself.

The parents also have ongoing mental-health problems. The father has major depressive disorder, and the mother has been diagnosed with borderline personality disorder, anti-social traits, bipolar disorder, substance-induced cognitive and emotional effects, ADHD, and methamphetamine-use disorder. The parents have done little to address these issues. The mother has at various times stopped taking her medication on her own, and the father failed to share his diagnosis with HHS. He denies having any mental-health problems.

The State petitioned to terminate both parents' parental rights. A termination hearing was held over two days in March and June 2023. The court terminated the father's parental rights pursuant to Iowa Code sections

---

[1] The mother has at times taken Vyvanse, which can show positive for amphetamine, but not for methamphetamine.
[2] The father's other tests came back negative.

232.116(1)(e), 232.116(1)(h), and 232.117 (2023). The father filed a timely appeal. The court terminated the mother's parental rights under Iowa Code sections 232.116(1)(e), 232.116(1)(g) 232.116(1)(h), and 232.117. The mother also appealed the termination order, but our supreme court dismissed the mother's appeal as untimely. As a result, we address only the father's claims in this opinion.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). In a review of a termination of parental rights, we (1) look to find statutory grounds for termination under 232.116(1); (2) consider the best interests of the child, as laid out under 232.116(2); and (3) consider any exceptions to termination under section 232.116(3). *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). The State must show clear and convincing evidence for termination; such evidence is without "serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *Id.* at 706 (citations omitted). It should also be noted that "[w]e are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.*

## III. Discussion

The father contests the termination of his parental rights by arguing that the court erred in finding the State proved the statutory grounds by clear and convincing evidence under section 232.116(1)(e), 232.116(1)(g), and 232.116(1)(h). The father also argues that termination is not in the best interests of the child and the close relationship between father and child precludes termination under 232.116(3)(c).

A. Grounds for Termination

We determine termination was warranted under Iowa Code section 232.116(1)(h), and we limit our discussion to those grounds. Termination is warranted under section 232.116(1)(h) when:

    (1) The child is three years of age or younger.
    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
    (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months . . . .
    (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Having been born in January 2022, J.N.-S. is less than two years old, and he was adjudicated a CINA in April 2022. He has been removed from parental custody since birth, a period of fourteen months at the time of the termination hearing. The father concedes that paragraphs one, two, and three have been met. He contests only the fourth paragraph—that J.N.-S. could not be returned safely to his custody. For a child to be able to be returned safely "at the present time," it must be safe to return them at the time of the termination hearing. *D.W.*, 791 N.W.2d at 707. The father contends that it was possible to safely return the child to his custody at the time of the termination hearing. We disagree.

Over the course of the underlying CINA proceeding, the father's interactions with HHS have been tainted by evasion and denial. He tested positive for methamphetamine in August 2022. But he has maintained this was a false positive, and his denial has prevented a resolution. In addition to the positive test, the father has at times failed to participate in testing. On two occasions the father failed to attend testing, and on a third occasion he appeared for the testing with

hair too short to test after learning four days earlier that he would be required to undergo a hair stat test. Because he tested positive for methamphetamine, the father was asked to undergo a substance-abuse evaluation. He did not complete that evaluation honestly, having failed to disclose any methamphetamine use. Failure to address drug use supports termination. *In re A.B.*, 815 N.W.2d 764, 775–76 (Iowa 2012). And while he was offered the opportunity to take a second evaluation, he declined to participate. HHS noted ongoing concerns with this evasiveness in light of his previous history of methamphetamine use, and a recommendation from 2017 for inpatient treatment as a result of an amphetamine related charge prior to the child's birth.

The father has also failed to address his own mental-health concerns. He has been sporadic in his attendance at therapy appointments. He reported he does not need the therapy. Despite the request by HHS, he was not willing to share his mental-health records.

Further, the father has closed his eyes to the mother's problems, and this contributes to the finding that J.N.-S could not be safely returned to his custody. *See In re J.H.*, 952 N.W.2d 157, 172 (Iowa 2020) ("Dad continues to reside with Mom, and his commitment to keeping [the child] around Mom and her family is just another example of Dad's inability to make appropriate parenting decisions."). The father claimed to case workers at various times that he and the mother were no longer together. He also professes that the mother does not have a drug problem, despite her positive tests and the fact that he was in a relationship with the mother when her first child was removed for these same issues.

The parents have continued to live together, and the father confirmed at the termination hearing that they were still in a relationship. The mother has tested positive for methamphetamine five times since J.N.-S.'s birth, and she no-showed for twenty-two other drug tests. The mother showed significant substance-abuse problems warranting termination, and to return J.N.-S. to the father would place the child right back into that unsafe environment. *See id.* ("If we were to return this child to Dad, we would essentially be nullifying the juvenile court's termination of Mom's parental rights because Dad intends to raise [the child] with Mom."); *A.B.*, 815 N.W.2d at 776 ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").

There is clear and convincing evidence that J.N.-S. could not be returned to the custody of the father at the time of the termination hearing. Consequently, we find termination was warranted under section 232.116(1)(h).

B. Best Interests of the Child and Permissive Exceptions

The termination of parental rights must be in the best interests of the child. *See* Iowa Code § 232.116(2). The court should "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* Additionally, Iowa Code section 232.116(3) provides that the court "need not terminate the relationship," on a finding of certain factors, including: "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c).

The father blends together the best interests of the child and exception issues by maintaining that termination is not in the best interests of the child because of the strong bond between him and J.N.-S. We interpret the father's argument as a challenge to both the best-interests finding and the court's declination to preserve the parental relationship with the permissive exception provided in Iowa Code section 232.116(3)(c).

First, we determine that termination is in the best interests of the child. When determining best interests, we give primary weight to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). Contrary to the father's argument on appeal, we are convinced the evidence proved termination serves the child's best interests.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.,* 778 N.W.2d at 41. We are persuaded by the need for stability and permanency, as J.N.-S. has been out of parental custody for his entire life. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *A.B.,* 815 N.W.2d at 778 (citation omitted).

As to the urged permissive exception, we note although the father participated in visits with the child, the visits did not progress beyond fully supervised visits. The father has fallen asleep during visits. J.N.-S. has never lived with the father. He has been in the care of his maternal grandmother since

birth, and he is strongly bonded to her. These factors weigh against finding that the parent-child relationship precludes termination. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) ("[The child] was just over a year old at the time of trial, and the record indicates she also has a close bond to her maternal grandparents, with whom she has spent much more time."); *D.W.*, 791 N.W.2d at 709 ("Over the course of [the child's] young life, [the mother] has only had closely supervised visits with him."). And even if we were to recognize a close bond between the child and his father, this record does not contain evidence that a termination of the father's parental rights would be detrimental to J.N.-S. We decline to apply this permissive exception.

## IV. Conclusion

Because J.N.-S. could not be returned to the father's custody at the time of the termination hearing, termination is in the best interests of the child, and the application of a permissive exception is not warranted on this record, we affirm the district court's termination of the father's parental rights.

**AFFIRMED.**