# IN THE COURT OF APPEALS OF IOWA

No. 23-1625
Filed December 6, 2023

**IN THE INTEREST OF A.S.,**
**Minor Child,**

**A.C., Mother,**
        **Appellant,**

**J.S., Father,**
        **Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother and father separately appeal the termination of their respective parental rights. **AFFIRMED ON BOTH APPEALS.**

Ryan R. Gravett of Gravett Law Firm, Clive, for appellant mother.

Jesse A. Macro Jr. of Macro Law, LLP, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Elizabeth Hadwiger of Youth Law Center, Des Moines, guardian ad litem for minor child.

ConGarry D. Williams of Des Moines Juvenile Public Defender, Des Moines, attorney for minor child.

Considered by Greer, P.J., and Ahlers and Buller, JJ.

**AHLERS, Judge.**

The juvenile court terminated the parental rights of both parents of A.S., a child born in 2016. The parents separately appeal. The mother challenges one of the two statutory grounds for termination found by the juvenile court and contends termination of her rights is not in the child's best interests. The father only challenges whether termination of his parental rights is in the child's best interests and references his bond with the child.[1]

We review orders terminating parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Typically, our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). However, if a parent does not challenge any of the three steps, we need not address the unchallenged steps on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

With respect to the statutory grounds authorizing termination, the juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f) and (*l*) (2023) and the father's rights pursuant to section 232.116(1)(f). With respect to the mother, she challenges the grounds for termination under paragraph (*l*) but does not challenge the grounds for termination under paragraph (f). When, as here, the juvenile court finds multiple grounds for

---

[1] The father also attempts to advocate on behalf of the mother and challenge the termination of her parental rights. However, the father does not have standing to raise issues on the mother's behalf. *See In re K.B.*, No. 22-1343, 2022 WL 17481399, at *1 n.1 (Iowa Ct. App. Dec. 7, 2022).

termination of parental rights satisfied, we may affirm on any one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). As the mother does not challenge the grounds under paragraph (f), she has waived any claim of error under this unchallenged ground. *See, e.g.*, *In re A.W.*, No. 23-1125, 2023 WL 6290680, at *1 (Iowa Ct. App. Sept. 27, 2023); *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020); *In re N.S.*, No. 14-1375, 2014 WL 5253291, at *3 (Iowa Ct. App. Oct. 15, 2014). So we find statutory the grounds authorizing termination under paragraph (f) satisfied.[2] As the father does not challenge the statutory grounds authorizing termination, we need not discuss them with respect to him.

We next turn our attention to whether termination of the parents' respective parental rights is in the child's best interests. When considering a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)).

This family has been involved with the juvenile court system since 2019. The child and his older sibling were adjudicated as children in need of assistance (CINA) that year.[3] The primary concerns at that time were the mother's use of

---

[2] Even had the mother challenged the statutory grounds under paragraph (f), we would find the grounds for termination satisfied based on the record evidence.
[3] The older sibling is not involved in this case.

alcohol and marijuana, the father's methamphetamine use, and domestic violence perpetrated by the father toward the mother and the older sibling. Those CINA proceedings closed in June 2021, with the child returning to the mother's custody and the older sibling being placed in a guardianship with her foster parents. As for the father, he had been incarcerated since April 2020 on a murder charge for which he was eventually convicted of second-degree murder. He is serving a fifty-year sentence, which has a thirty-five-year mandatory minimum.

Less than a year after the first CINA proceeding closed, a delivery worker found the child alone outside the mother's apartment. The police were contacted and, when they arrived, they discovered the mother inside the apartment "heavily intoxicated." They also observed marijuana and drug paraphernalia in areas accessible by the child. The mother admitted she drank a "fifth" of vodka.[4] The child was placed in foster care with the same family that serves as guardians to his older sibling. Since that time, the mother has struggled with her sobriety, sometimes appearing intoxicated during visits or when interacting with caseworkers. For example, the mother passed out from intoxication while exercising phone visitation with the child. The older sibling captured a video of the mother wherein the mother appeared to be intoxicated, called the sibling the foster mother's "bitch," and referred to the foster mother as a "bitch."[5] Approximately three months before the termination hearing, the Department of Health and Human

---

[4] A "fifth" is "a unit of measure for liquor equal to one fifth of a U.S. gallon (0.757 liter)." *Fifth*, Merriam-Webster, https://www.merriam-webster.com/dictionary/fifth (last visited Nov. 17, 2023).

[5] Although the record does not state exactly when the video was taken, we infer it was taken January 18, 2023, based on references made in the August 23, 2023 Report To The Court submitted by the Department of Health and Human Services.

Services received a report that the mother had the child urinate in a cup for her, presumably to pass off as her own urinalysis testing sample. *See In re K.P.*, No. 20-0220, 2020 WL 1881122, at *2 (Iowa Ct. App. Apr. 15, 2020) (noting efforts to sabotage drug testing as a negative factor to consider in assessing a parent's claim of sobriety).

About four weeks before the termination hearing, the mother and a friend showed up at the home where the mother's own mother used to live and tried to enter the home. The current occupant of the home called the police. Police arrived to find the mother "severely intoxicated" and believing her mother still lived there. When questioned about how much she had to drink that evening, the mother responded, "not enough." Then the mother's pants fell down. When a police officer asked her to pull them back up, she refused, choosing instead to kick them off. Police arrested the mother and a subsequent search of her person revealed marijuana and prescription medication for which she did not have a prescription. At the time of the termination hearing, the mother faced criminal charges related to this event.[6]

From these facts, we agree with the juvenile court that termination of both parents' rights is in the child's best interests. We understand the mother takes issue with the fact that the child's therapist did not provide any testimony or insight to any caseworker on how termination might impact the child. While the therapist could certainly have insight on the impact termination is likely to have on the child,

---

[6] The mother was already on probation after pleading guilty to child endangerment related to the incident when the child was found outside the mother's apartment by the delivery worker. The mother was facing possible revocation of that probation at the time of the termination hearing.

such testimony is not required to reach a best-interests determination. What is clear from the record is that the mother cannot provide for the child's basic needs or safety given her ongoing alcohol abuse.

As for the father, he can do little to nurture the child's needs or growth from prison. The father points out that if his rights are terminated, then the child will not receive any financial support from him. While we question how much financial support the father can provide while serving at least thirty-five years in prison, even if we assume he has financial resources, financial support is not the focus of our best-interest analysis. *See* Iowa Code § 232.116(2); *see also In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring) ("A child's safety and the need for a permanent home are now the primary concerns when determining a child's best interests.").

The reality is that neither parent can provide the child with his basic needs— the mother because of her ongoing substance abuse and the father because of his long-term incarceration. Conversely, the child is doing well with his foster family, which is the same foster family he stayed with during the prior CINA proceeding. He even sometimes refers to the foster parents as "mom" and "dad." Termination of both parents' rights best serves the child's interests.

To the extent either parent attempts to invoke a permissive exception to termination by referencing their respective bonds with the child, neither is persuasive. Section 232.116(3)(c) permits the court to forgo termination when the bond between parent and child is so strong that termination would be detrimental to the child. However, it is the parent's burden to establish this exception to termination. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). It is not enough

to establish a bond exists; instead, the bond must be so significant that severing it would be manifestly detrimental to the child. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Neither parent established a bond of that magnitude, so this exception does not apply.

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**