**IN THE COURT OF APPEALS OF IOWA**

No. 24-1004
Filed September 18, 2024

**IN THE INTEREST OF Z.W. and D.W.,**
**Minor Children,**

**J.W., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block,

Judge.

     A parent appeals the termination of their parental rights.  **AFFIRMED.**

     Jamie L. Schroeder of Nelson & Toenjes PLLC, Shell Rock, for appellant

mother.

     Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney

General, for appellee State.

     Kelly J. Smith of Waterloo Juvenile Public Defenders Office, Waterloo,

attorney and guardian ad litem for minor children.

     Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

The parent, J.W., appeals from an ordering terminating parental rights to Z.W. (born 2021) and D.W. (born 2023). The sole challenge on appeal concerns J.W.'s request for additional time. We affirm.

The children were removed from J.W.'s custody in June 2023 based on reports of physical abuse, domestic abuse, and denial of critical care. The family came to the attention of the Iowa Department of Health and Human Services (HHS) based on a report J.W. hit the children's older sibling (who was seven years old) and caused a black eye and bruising. J.W. admitted to inflicting these injuries and to striking the children at issue in this appeal (who were two years old and a few months old at the time), allegedly as part of regular physical discipline in the household. J.W. also admitted to hitting and biting the father in front of the children. And to threatening to kill the older sibling. J.W. was charged with one count of child endangerment causing bodily injury, a class "D" felony in violation of Iowa Code section 726.6(7) (2023), and two counts of child endangerment, aggravated misdemeanors in violation of section 726.6(8), for the acts against the older sibling and these children.

J.W. reported diagnoses of post-traumatic stress disorder, anxiety disorder, and depression—and a history of not complying with medications for these conditions, allegedly due to difficulties swallowing. During the HHS investigation, J.W. threatened to commit suicide. While J.W. made some progress with medication compliance, HHS remained concerned for J.W.'s ability to safely care for the children. J.W. attended therapy for a time but did not choose to address

HHS's concerns and expressed not seeing the need for mental health treatment or anger management services.

At permanency, the juvenile court denied J.W.'s request for additional time and directed the State to petition for termination of parental rights. The court's decision was motivated in part by the parents' recent arrests for sexual abuse perpetrated against the older sibling. J.W. said it was "ok" for the oldest child to touch the father's penis and took no action to stop it. J.W. refused consent for a forensic interview of the victimized child, which required HHS to approve the interview through the courts. And J.W. admitted the same child had watched the parents perform oral sex.

At termination, the juvenile court found that "[n]either parent has meaningfully engaged in the services being offered and have repeatedly stated that they are the victims" and that they believe the older child "is to blame" for HHS involvement. The juvenile court also emphasized that the parents did not recognize how their behaviors had harmed the children or placed them at risk of harm. HHS testimony supported these findings. In the words of the HHS worker: "The parents have yet to make any progress at all towards reunification."

The juvenile court found J.W.'s mental-health issues were not adequately managed, and noted J.W. took no responsibility for the family's issues and blamed the oldest child for compelling the use of physical violence. The court also pointed to an email J.W. sent documenting ongoing concerns about sexual abuse in the home without taking any protective action to safeguard the children. Again, these findings were supported by HHS testimony and documentary evidence.

The criminal charges for child endangerment resulting in bodily injury and sexual abuse in the second degree remained pending as of termination. No-contact orders prohibited contact between J.W. and the older child. And J.W. remained incarcerated, awaiting plea or trial.

The county attorney, HHS, the guardian ad litem, and the court-appointed special advocate all recommended termination of parental rights. There was also widespread agreement the children were thriving in foster care.

The juvenile court denied J.W.'s request for additional time and terminated both parents' rights to the children under Iowa Code section 232.116(1)(d), (e), and (h). J.W. appeals but the father does not. We review de novo. *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The sole issue advanced by J.W. on appeal is whether the court should have granted the request for additional time. "[T]he juvenile court may deny termination and give the parent an additional six months for reunification only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). And the parent bears the burden to make that showing. *Id.* at 322–24. J.W. did not carry the burden here to prove the need for removal would no longer exist in six months, and we agree with the juvenile court's denial of J.W.'s request for additional time. J.W. remained incarcerated pending trial on a pending class "B" felony with a seventeen-and-a-half-year mandatory minimum and a class "D" felony carrying a five-year prison sentence with no minimum. J.W. does not offer, and we have no reason to believe, there is any prospect J.W. will be able to care

for the children in six months. And there is no reason to think that, even if released from jail tomorrow, J.W. has adequately remedied the deficits that led to removal.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Here, J.W. lacks even basic insight into the trauma inflicted on the children or the changes that must be made to establish a safe and stable home. We affirm the juvenile court's denial of J.W.'s request for additional time.

**AFFIRMED.**