**IN THE COURT OF APPEALS OF IOWA**

No. 25-0944
Filed August 6, 2025

**IN THE INTEREST OF D.C. and C.W.-S.,**
**Minor Children,**

**B.S., Father,**
    Appellant,

**J.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Brendan Greiner, Judge.

A mother and father each appeal the juvenile court's termination of their respective parental rights. **AFFIRMED.**

Audra F. Saunders of Wasker Dorr Wimmer & Marcouiller P.C., West Des Moines, for appellant father.

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

James Thornton, Ankeny, attorney and guardian ad litem for minor children.

Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

A mother and father each appeal the juvenile court's termination of their respective parental rights. The juvenile court terminated the mother's parental rights as to the son, D.C., and the daughter, C.W.-S., and the father's parental rights as to the daughter.[1] The father's parental rights to the daughter were terminated pursuant to Iowa Code section 232.116(1)(f) and (h) (2025), and the mother's parental rights were terminated pursuant to section 232.116(1)(f) (son and daughter), (g) (son and daughter), and (h) (daughter). We affirm.

## I. Background Facts and Proceedings

The son was born in February 2020 and the daughter was born in March 2024. The mother is the parent of both children and the father is the parent of the daughter. The son came to the attention of the Iowa Department of Health and Human Services in January 2024 when the State filed an application for temporary removal due to the mother's positive test for methamphetamine and unprescribed amphetamines. She has had her parental rights in relation to two other children previously terminated out of similar concerns. The State's application was granted, and the State then petitioned to adjudicate the son in need of assistance. Shortly after her birth, in March, the State petitioned to adjudicate the daughter in need of assistance due to the same concerns. The daughter's father was unknown to the department at that time. Both children were adjudicated in need of assistance. Removal was continued in May, and the department was instructed to seek foster placement for the children.

---

[1] The biological father of the son is unknown.

In October, the State filed an amended child-in-need-of-assistance petition naming the father in relation to the daughter. That petition identified the father as being in jail on drug-related charges, and claimed he had substance-use and mental-health issues. The juvenile court confirmed the amended petition in January 2025 and continued removal. In that order, the juvenile court found that the mother

> has not personally seen the children since April 2024. Since [the daughter] was released from the hospital, after being born, the mother has only seen [her] in person one time. The mother had been sporadic in participating in virtual visits with the children. She admittedly had only seen [the daughter] virtually three times, virtually.
> The mother was admittedly not participating in recommended substance abuse treatment, mental health and/or other services. . . . The mother has refused to participate in all [department] drug testing. Furthermore, the mother has acknowledged depression and other mental health needs.
> The mother continues to have active arrest warrants, from outside of Polk County. In December 2024, the mother was arrested—at PCJ—for trespass, but she was not sent to other counties to resolve outstanding warrants.
> [The father] is currently in prison for felonies and unable to care for [the daughter]. He is working on setting up services, in prison. [The department] has done an out of state [Interstate Compact on the Placement of Children] for Wisconsin, for [the father]'s mother—to possibly be a long term plan for [the daughter]. Before the father was sent to prison, he visited with [the daughter] in the community—which went well. [The department] noted they had requested the father participate in drug testing, but he refused and said he would test positive for marijuana.

The juvenile court determined termination was the best course for permanency. The State petitioned to terminate the parents' parental rights in February. Trial was held in May, at which time the father was in prison. The juvenile court then terminated both parents' parental rights, and both parents now appeal.

## II. Standard of Review

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (citation omitted). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially" when they involve witness credibility determinations. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (citation omitted).

## III. Discussion

We use a three-step analysis in reviewing the juvenile court's termination of parental rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We analyze whether (1) a statutory ground for termination has been established; (2) termination is in the children's best interest; and (3) any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

### A. Grounds for Termination

The father does not contest the grounds for termination.

The mother contests all three grounds for termination, but the State argues the mother waived her arguments as to the grounds under section 232.116(1)(g) and (h). We agree. While the mother has stated which statutory grounds for termination she disagrees with, she has failed to reference the record or provide any explanation as to why she disagrees with those grounds. *See* Iowa R. App. P. 6.1401—Form 5. We abstain from taking on the role of the mother's advocate and formulating her argument for her. *See In re G.A.*, No. 24-1574, 2024 WL 5153371, at *1 (Dec. 18, 2024) ("To substantively address [her] claims would require us to don the hat of an advocate and tease any substantive argument from the [mother]'s petition, and that is something we decline to do."). Thus, we affirm

the grounds for termination on the mother's waived, unchallenged grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").

## B. *Best Interests*

The father argues that termination is not in the children's best interests. "Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." *In A.M.*, 843 N.W.2d at 112 (citation omitted). In considering the best interests of the child, we are to give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

"[T]he child's safety and the need for a permanent home" are the primary elements of a best-interests analysis. *In re A.M.*, No. 20-0480, 2020 WL 4814170, at *4 (Iowa Ct. App. Aug. 19, 2020). A parent's past performance "may be indicative of the quality of the future care that parent is capable of providing." *See A.B.,* 815 N.W.2d at 778 (citation omitted). So "[r]ather than speculate about what the future holds for" a parent, "it is more accurate to look in the rear-view mirror and make a decision for [the child] based on what has already happened." *In re J.H.,* 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). "In determining [a child's] best interests, 'we look to [the parent's] past performance because it may indicate the quality of care'" they can provide the child in the future. *Id.* at 172 (citation omitted). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under

section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *A.B.*, 815 N.W.2d at 777.

The father argues termination is not in the daughter's best interest because "evidence shows the child was bonded with the father."  While those successful visits with the daughter may indicate the existence of a bond between her and the father, successful visits will not, on their own, override considerations of the child's safety, long-term growth, and physical, mental, and emotional condition and needs.  *See* Iowa Code § 232.116(2).  At the time of the hearing, the father was incarcerated at the Mount Pleasant Correctional Facility.  Due to his incarceration, he is unable to provide her the stable, long-term care the daughter requires to achieve permanency.

The daughter, who has experienced serious medical issues with her eyes and ears, has had those needs met by her foster parents—who have even taken her to the Mayo Clinic to receive treatment.  Those medical needs make permanency all the more vital.  We cannot delay that permanency by hoping someday [the father] will learn to be a parent and be able to provide a stable home for the [daughter]."  *A.M.*, 843 N.W.2d at 112.  And contrary to the father's assertion otherwise, failure to terminate his parental rights would expose the child to risk of further adjudicatory harm.  The father is in no position to attend to child's particularized medical or emotional needs and will not be released from incarceration until his December 2025 recall date.  Termination of the father's parental rights was in the daughter's best interests.

Similar to her argument above, the mother has failed to set forth any argument as to why termination was not in the children's best interests.  She has

therefore waived this argument, and we also agree that the termination of the mother's parental rights was in the children's best interests.

### C. Permissive Exception

The father asserts that the bond between him and the child precludes termination. "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3)[ ]." *A.S.*, 906 N.W.2d at 476. The exceptions under Iowa Code section 232.116(3) are permissive and not mandatory.

"The court need not terminate the relationship between the parent and child if the court finds . . . clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). "[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).

But because the father's permissive-exception argument for the child-parent bond mirrors his best-interests argument for the same, we reiterate that the father's positive interactions with the child during visits do not outweigh his inability to care for the child. The child's best interests are our paramount concern, and the father has not shown that he can overcome the conditions that led to the child's adjudication as being in need of assistance.

**AFFIRMED.**