# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-2074
Filed February 25, 2026

———————————

**In the Interest of B.R. and C.R., Minor Children,**

**T.R., Mother,**
Appellant,

**C.R., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Michelle Jungers, Judge.

———————————

**AFFIRMED ON BOTH APPEALS**

———————————

Michelle R. McCann of McCann Law, PLLC, Cedar Falls, attorney for
appellant mother.

Joseph Martin, Cedar Falls, attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Christina M. Shriver, Waterloo, attorney and guardian ad litem for minor
children.

———————————

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Ahlers, P.J.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of a mother and father to twin children, born in 2024. The parents separately appeal. The father challenges whether termination is in the children's best interests, arguing he should have been given additional time to work toward reunification or that the juvenile court should have established guardianships for the children with his mother serving guardian instead. The mother challenges the statutory ground authorizing termination and also challenges whether termination of her parental rights is in the children's best interests. We affirm the termination of both parents' parental rights.

We review termination-of-parental-rights cases de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Although we are not bound by the juvenile court's factual findings, we give them respectful consideration, especially when assessing the credibility of witnesses. *Id.*

Our review follows a three-step process of determining whether statutory grounds for termination exist, whether termination is in the child's best interests, and whether an exception should apply to prevent termination. *Id.* at 294. But we do not address any step in this process that is not challenged on appeal. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We address each parent's claims separately.

## I. The Father's Appeal

The father only challenges whether termination is in the children's best interests. He asks us to conclude that an alternative to termination—either a grant of additional time to work toward reunification or establishment of guardianships—would best serve the children's interests rather than termination of his parental rights. When making a best-interests

3

determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2) (2025).

It is true that the juvenile court may grant a parent additional time to work toward reunification if it does not terminate the parent's parental rights. *See id.* § 232.117(5); *see also id.* § 232.104(2)(b) (providing a permanency option of granting a parent an additional six months to work toward reunification). But we agree with the juvenile court's decision not to grant such time.

Granting additional time is only appropriate when we are able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). The record does not reveal any such factors, conditions, or expected behavioral changes. The father was incarcerated at the time of the termination hearing, and he anticipated he would be released from prison about four months after the termination hearing. He was incarcerated for committing acts of violence against the mother. While he had frequent phone contact with his case worker from the Iowa Department of Health and Human Services, he did not use that time to gain critical parenting skills. Instead, he used that time to profess his innocence despite pleading guilty to his offenses. And prior to his incarceration, he continued to use methamphetamine, including prior to a visit with the children. This resulted in him displaying signs of his use during the visit. From his combative testimony at the termination trial, it is apparent that the father does not understand the full obligations of parenting much less

what deficiencies he would need to remedy prior to any potential reunification. So there was no basis to grant the father any additional time to work toward reunification.

As to his argument that the juvenile court should have established guardianships for the children with his mother serving as guardian, we reject that argument as well. As a starting point, a guardianship is not legally preferred to termination. *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). And the children are still very young, so a guardianship would need to be in place for a long period of time, which is not a preferred permanency option. *See id.* (noting the sixteen-year period for which the guardianship could potentially remain in place to be a factor disfavoring a guardianship in lieu of termination of parental rights). Moreover, when not incarcerated, the father lives with his mother in a condemned home. So the physical structure of the paternal grandmother's home is not safe for the children, nor will its occupants be safe to be around the children once the father is released from prison. Additionally, the paternal grandmother did not attend the termination hearing for the juvenile court to evaluate her suitability to serve as a guardian. All of these factors support the juvenile court's conclusion that establishment of guardianships would not be in the children's best interests.

We conclude that termination of the father's rights is in the children's best interests. The children have been in the care of their foster family since their discharge from the hospital following their birth. And the foster family has modified its daily life to accommodate the children's needs. The children's foster parents desire to adopt the children, and termination of the father's rights will allow the children to be adopted. The record makes it clear that the children's best interests are served by termination of the father's parental rights and freeing the children for adoption.

We affirm the termination of the father's parental rights.

## II.    The Mother's Appeal

The mother first challenges the statutory grounds for termination. Here, the juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(h).  Section 232.116(1)(h) permits termination upon clear and convincing proof that (1) "[t]he child is three years of age or younger"; (2) "[t]he child has been adjudicated a child in need of assistance"; (3) the child has been removed from the physical custody of the parents for at least six of the last twelve months; and (4) the child cannot be returned to the custody of the parent.  The mother challenges only the fourth element.

Following our de novo review, we agree with the juvenile court that the children could not be safely returned to the mother's custody at the time of the termination hearing.  *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" as used in section 232.116(1)(h)(4) to mean at the time of the termination hearing).  The children were removed from the mother's custody at the time of their discharge from the hospital following their birth due to concerns about the mother's ability to care for the children and other issues.

The mother has learning disabilities and has her own guardian. Despite her best efforts, the mother has not gained the necessary skills to safely care for the children. It has taken her about a year to complete one half of the Safe Care program[1] because she "is unable to understand the

---

[1] At the termination trial, a case worker described the Safe Care program as follows: "It's a parenting education program that provides parents—it's a curriculum, I think it's fourteen or eighteen weeks [of] curriculum of different parenting things that they are taught and then can implement during their visitations."

information she is being provided." When attending visits with the children, she struggles to understand the children's needs and instead relies on the visitation supervisor to direct her. At the termination hearing, a worker explained that he frequently explained to the mother how to safely secure the children into their car seats, but she could not remember how to do so on her own. When she tried to maintain a residence on her own, the home became unsanitary for the children because it was infested with bed bugs and covered in dog feces. And she struggles to make safe decisions. She recently moved away from her legal guardian despite that person being a significant support for the mother. And she requested that a man she began seeing be permitted to attend visits with her children even though she knew he was on the sex-offender registry.

In short, the mother simply does not have the skills and judgment to keep the children safe. So, a statutory ground for termination has been established.

Finally, the mother argues that termination of her parental rights is not in the children's best interests, citing her bonds with the children. As previously stated, when making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). With respect to best interests, we consider the parent-child bonds as they impact the children's "mental and emotional conditions and needs." *See In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025).

Even considering the mother's clear love and affection for the children, we still conclude that termination of her parental rights will best serve the children's interests. The mother simply cannot provide the

children with safe care. Conversely, the foster family is attuned to the children's needs, including unique health needs stemming from their premature birth. And as previously mentioned, the foster family is willing to adopt the children, offering them maximum stability. We recognize that a child's safety and need for permanency are "the defining elements in a child's best interests." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted). Both of those elements can be best met through termination and subsequent adoption. So termination is necessary to serve the children's best interests.

We affirm the termination of the mother's parental rights.

**AFFIRMED ON BOTH APPEALS.**